# Wytheville

## E. S. REID AND M. A. MARTIN v. J. S. PERROW, C. MASON PERROW, AND CECIL, BARRETO AND CECIL, INC.

### June 14, 1923.

1. TRUSTS AND TRUSTEES—*Corporation—Authority of Creditors' Committee to Pay Debts of Corporation—Case at Bar.*—A corporation being in financial difficulties, a committee was appointed by its directors called a creditors' committee "to take charge of the property and conduct the operation of the corporation."

   *Held:* That the creditors' committee had no power, although acting in good faith, to apply funds of the corporation to the payment of debts of the corporation which arose prior to its appointment and for which two members of the committee were liable as sureties, thus giving such debts the preference.

2. TRUSTS AND TRUSTEES—*Liability of Trustee—Trustee Acting in Good Faith.*—Good faith is no defense where a trustee has arbitrarily overstepped the bounds of his authority.

3. CORPORATIONS—*Assets—Creditors' Committee of Corporation—Misapplication of Money Refunded by Promoters—Case at Bar.*—In the instant case, the promoters of a corporation, by direction of the Corporation Commission, refunded to the corporation part of their commissions collected in violation of the blue sky law. The promoters were members of a creditors' committee appointed by the directors of the corporation "to take charge of the property and conduct the operation of the corporation," and in that capacity applied the money refunded to the payment of debts contracted by the corporation prior to the formation of the creditors' committee, for which they were liable as sureties.

   *Held:* That the money thus refunded became part and parcel of the general assets of the corporation, of which the committee was to take charge, and thus became a trust fund, which neither the promoters, in any capacity whatsoever, nor the creditors' committee, had authority to distribute among the creditors whose debts arose prior to the appointment of the committee; that the application was a wrongful conversion by the promoters for their own use and benefit,

which rendered them personally liable, and since they acted in concert, rendered them jointly and severally liable.

4. BANKRUPTCY AND INSOLVENCY—*Preferences—Good Faith—Case at Bar.*— It is not fraudulent *per se* even for an insolvent debtor to prefer certain creditors in the distribution of his assets, if the preference is made in good faith, with no actual fraudulent intent. But this rule has no application to the instant case, which was the attempt of members of a committee, called a creditors' committee, of the debtor corporation to act for the corporation in making such a preference, without any authority whatsoever so to do.

Appeal from a decree of the Circuit Court of Campbell county. Decree for complainants. Defendants appeal.

*Affirmed.*

This is a suit in chancery instituted by the appellees, J. S. Perrow, vice-president and one of the principal stockholders of the Steel Castings Corporation, C. Mason Perrow, a director and stockholder of such corporation, and named as trustee in the deed of assignment mentioned below, which was directed to be, but was never in fact, executed, as is set forth below; and Cecil, Barreto and Cecil, Inc., a creditor of such corporation (who will be hereinafter called plaintiffs), against E. S. Reid and M. A. Martin, the appellants (hereinafter designated appellants, or by name), and others; the bill alleging the insolvency of said corporation, the sales of certain stock of the corporation by the appellants, Reid and Martin, in violation of the blue sky law (Acts 1920, page 536), a refund of $1,065.00 by said Reid and of $897.22 by said Martin, made to the corporation under a certain ruling of the State Corporation Commission, being commissions received by Reid and Martin, respectively, upon such sales of stocks, the misappropriation and application of such refunded money by Reid and Martin, acting as members of a certain creditors'

committee, appointed by the board of directors of the corporation, to payments on account of certain debts of the corporation on which Reid and Martin, respectively, were bound as sureties for the corporation, constituting action on the part of Reid and Martin exceeding their authority as members of such committee and in breach of the trust reposed in them, and resulting in a preference in favor of such debts in the distribution of the assets of the corporation in payment of its debts; and seeking, amongst other relief, the recovery of judgments against the said Reid and Martin for the said sums of money refunded and misapplied as aforesaid.

The decree under review held that, in the opinion of the court, the application of the respective refunded amounts aforesaid constituted "preference which contravened the purposes for which the creditors' committee was created and constituted a breach of the trust relationship between the said committee and the creditors of said Steel Castings Corporation on the part of said M. A. Martin and E. S. Reid as to the amounts refunded by them respectively and applied" (as aforesaid), "for which the said M. A. Martin and E. S. Reid are jointly and severally liable;" and decreed, "That the said M. A. Martin and E. S. Reid do, as a joint and several obligation, pay to Frank L. Thomasson, receiver in this cause, the sum of ($1,962.29) * *."

The facts, so far as material, as disclosed by the evidence without conflict, may be stated as follows:

The aforesaid sales of stock were made by Martin and Reid without the requirements of the blue sky law being complied with; and the commissions retained by them, respectively, from the proceeds of such sales, after deducting the actual expenses incurred by them, were the respective sums of money refunded by them, as aforesaid, which amounted to a commission on such sales

paid by the corporation in excess of the seven and one-half per cent. mentioned in the blue sky law.

Such sales of stock were made for money to go into the treasury of the corporation to supply its general corporate needs of capital.

The following minutes of the board of directors of said corporation appear in evidence:

"Directors' Meeting, April 23, 1920.

"Before withdrawing, Mr. N. B. Handy advises that the best way to liquidate would be through a committee of creditors, by friendly arrangement, thereby avoiding court litigation and lawyers' fees. Proposed by C. M. Perrow, seconded by A. H. Cox, that the president, secretary and the treasurer, which are now in office, shall continue to exercise their duty until further action for election of successors.

"Upon motion of Mr. Reid, seconded by C. M. Perrow, the course suggested by the president as to keeping the business going, is approved and he is authorized to take the necessary measures and procure the funds to that end.

"Upon motion it was voted to adjourn subject to the call of the president."

"Directors' Meeting, May 3, 1920.

"Meeting of the board of directors, Steel Castings Corporation, held Monday, May 3, 1920, pursuant to a notice mailed by the secretary to each of the directors.

"Present: Mr. McL. McKeithen, R. M. Perrow, C. M. Perrow, J. E. Brochu, E. A. Strode and H. L. Lane.

"The president states that the condition of affairs are about the same as two weeks ago.

"The minutes of the last meeting are read and approved.

"The president makes a verbal report and states that the assembling plant has been shut down last week on account of the lack of sheets. States that he has made a trip to Pittsburgh in order to induce the dealers to cancel the orders for large quantities of sheets placed a month ago, the company not having sufficient funds to accept and pay for the sheets when delivered. One carload of 56,000 pounds being now on the way and a draft which came in through the First National Bank, $———— having been protested for non-payment. Also a carload of scrap and one of pig iron remaining still on demurrage, the company not having sufficient funds nor credit to release them. Also the current accounts payable for March and April remaining unpaid for the same reason. None of the directors nor stockholders having responded to the appeal for funds, the credit at the bank having been closed on account of the recent trouble among the stockholders and the directors, the company being thereby in a very precarious situation, and something must be done at once in order to relieve the situation and avoid an action for receivership on the part of the creditors. His personal credit being involved, the president urges the board of directors to take immediate action. Messrs. Perrow and McKeithen are also of the opinion that some action must be taken at this meeting, and, for that purpose, have retained the services of E. A. Strode, Esq., of Lynchburg, as counsel, and who is present at this meeting.

"Mr. H. L. Lane is at this point called in for consultation. He analyzes with the directors and their counsel the balance sheet of April 17th and also the present financial situation of the company which is apparently solvent, but lacks capital to pay its current indebtedness and continue its operations. Mr. Lane again expresses his willingness to help the concern, not by advancing

more money, but in helping to conserve its assets and, if necessary, to liquidate the business without unnecessary expenses and losses.

"It is the unanimous opinion of the board that a committee of creditors would be the best means and solution of the problem, if such a committee could find a way of obtaining the necessary credit to complete one or two hundred furnaces before going into formal liquidation.

"After a lengthy discussion, the following resolution is unanimously adopted:

"Proposed by C. M. Perrow, seconded by R. M. Perrow.

"Whereas, the business of this corporation cannot be carried on for want of capital, and it has become necessary to liquidate the said business in such a manner as to avoid the expenses of a receivership; Now, therefore, be it

"Resolved, that E. S. Reid, M. A. Martin and Henry L. Lane be and they are hereby appointed, authorized and empowered as a creditors' committee to take charge of the properties and to conduct the operation of the corporation, with power to buy and sell for and on behalf of the said corporation in the due course of business, to borrow money for the payment of its debts and the conduct of its business, and generally to manage the affairs of the corporation for a period of not exceeding six months from this date, but the said committee may at any time resign by mailing such resignation or a copy thereof to each member of this board at least one week before such resignation is to take effect.

"The said committee may have an appraisal made of the property, real and personal, of the corporation, but shall not sell the business as a whole, nor its real estate or good will, nor any rights it may have in or to any

patents or patent rights or to the use of the same, without the approval and confirmation of the stockholders of this corporation at a meeting legally called and held, which meeting shall be called by the giving of notice thereof to each stockholder of record, such notice to be sent by the secretary of this corporation by registered mail not less than ten days in advance of the date of such meeting and shall state the purpose of said meeting. A majority vote of the stock voted at a meeting so called and held shall be sufficient to approve and confirm such sale, whether or not a majority of all the stock be voted at said meeting.

"The said committee shall keep true and accurate books of account and report its transactions to this board.

"J. E. Brochu, President.
"R. M. Perrow,
"C. Mason Perrow.

"Louis Brochu, Secretary.

"Mr. McKeithen having only a few minutes to make his train, is forced to leave the meeting, but votes with the other directors on the body of the resolution as prepared by Attorney Strode; the four lines of the preamble being written after his departure, after stating that he (Mr. McKeithen) concurs unto and approves whatever the other directors would do in regard to completing the arrangement with the creditors' committee."

The said creditors' committee, upon the adoption of the last mentioned and quoted resolution of the board of directors, took entire charge of the assets and business of the corporation under the authority of such resolution, and retained such entire charge of the assets (except the aforesaid refunded money), and conduct of the business, claiming to have acted in all matters under said authority, until after the bill in this suit was filed, on the first Monday in September, 1920.

It appears from the testimony of said Martin, in which the testimony of said Reid concurs, that complaint was made by some one to the State Corporation Commission that the stock, which was the subject of the aforesaid sales made by Martin and Reid, had been illegally sold (*i. e.*, in violation of the blue sky law); that the Commission sent an auditor up to investigate the books of the said corporation; that, after the audit of such books was completed, the corporation received a letter from the Commission, stating that the corporation, Martin and Reid had violated the blue sky law.  That as soon as they learned of this Martin and Reid and the president of the corporation went to Richmond to the office of the Commission, in the latter part of July, 1920.  As to what occurred at the office of the Commission on that occasion Martin testifies as follows:

"   *   *   and we planned between us, and the Commission agreed, that if Mr. Reid and I would return our commissions that he would not report us to the Commonwealth's attorney of Campbell county.

"Q. How much did you refund?

"A. $897.22.

"Q. How did you arrive at that figure?

"A. Of course, that commissioner had the auditor's report before him and he figures out how much I had been paid.   I then showed him receipts of expenses I had incurred in connection with this business and he deducted the expenses and told me he didn't want me to suffer any actual loss other than the difference, because he believed that Mr. Reid and I had ignorantly violated the law and he didn't want to penalize us and didn't expect to do it if we would refund the actual gain in the proposition."

It further appears from such testimony that, on August 2, 1920, both Martin and Reid made their afore-

said refund of commissions, which had been retained by
them as aforesaid, by checks payable to the said corpo-
ration, and, at the direction of said Martin as chairman
of the said creditors' committee (who, as authorized by
the creditors' committee, along with the secretary of the
corporation handled the current business of the corpo-
ration), these checks were indorsed by the secretary of
the corporation with the name of the corporation by
himself as secretary and treasurer (he holding both po-
sitions), and the checks, so indorsed, were, at the direc-
tion of said Martin, as chairman as aforesaid, used by
the secretary in making payments on account of two
notes in bank, which had been discounted for the bene-
fit of the corporation, and hence were the obligations of
the corporation as principal, on which Martin and Reid,
respectively, were bound as sureties as between them
and the corporation, although their names on the face
of such respective notes appeared as makers.

It further appears in evidence that the two notes were
not obligations of the corporation created during the
operation of its business by the creditors' committee,
but debts which arose prior to the appointment of such
committee.

It also further appears in evidence that on July 24,
1920, nine days prior to the aforesaid application of said
refunded amounts, pursuant to the call of a sufficient
number of stockholders of said corporation, a notice was
sent out by the secretary, calling a special meeting of
the stockholders to be held on August 4th (just two days
after said application of the aforesaid refunded amounts
were made), "for the purpose of considering and acting
upon the question of closing up the business of the com-
pany, disposing of the assets, or the raising of additional
capital necessary for the continuance of the affairs of the
company, and for the transaction of any and all business

necessary or desirable in connection therewith." And the circumstances shown in evidence demonstrate very clearly that the said Martin and Reid, at the time they made said application of said refunded sums, did so in apprehension that the August 4th meeting of stockholders would probably find that the additional capital, necessary for the continuance of the corporation as a going concern, could not be raised, and would probably decide upon closing the business of the corporation and liquidating its assets, and in apprehension that the result of the liquidation might be the failure of the assets to pay all of the debts of the corporation in full; and that Martin and Reid made such application with the intent to give the two debts aforesaid, to which said refunds were applied, preference, in so far as the money refunded was concerned, over all other debts of the corporation, and to thus reduce to that extent their personal liability therefor in case the assets of the corporation should prove upon liquidation to be insufficient to pay all its debts in full.

At the meeting of the stockholders, held on August 4, 1920, pursuant to said call, the following resolution was adopted:

"Whereas, it appears from the report of the officers of this company, that judgments have recently been recovered against it and that several suits are now pending and that there are no funds available for the liquidation of same, and in order to prevent any creditor from obtaining priority and that all creditors may share ratably in the assets of this company, be it resolved:

"That the vice-president and secretary of this company execute and deliver a general deed of assignment to Mason Perrow, conveying all of the assets of this company, both real and personal, under the usual provision, terms and conditions of such deeds, in trust for

the benefit of all the creditors ratably, except such creditors as have now priority by law, and especially granting to such trustee the power to sell at public auction or privately the plant, machinery and fixtures of this company. That the said trustee shall have the authority to employ such agents, attorneys and labor, etc., and shall have power to institute and defend suits, compromise claims for and against this company and in general to do all other acts and things he may deem necessary to conserve and promote the interest thereof."

But the deed of assignment directed by the last named resolution was never executed. The creditors' committee took the position that the special stockholders' meeting was called merely to consider giving that committee authority to sell the property and close up the business of the corporation; that the tenure of office of such committee had not then expired, and did not expire until November 3, 1920 (six months after its appointment), by the terms of the resolution of May 3, 1920, which appointed the committee; that the committee had not been dealt with at all or discharged by the stockholders' meeting; that the attempt by said resolution to make the deed of assignment was illegal; that the committee therefore had the right to ignore the resolution and continue in custody of the property and affairs of the corporation. The committee conferred with the secretary and he was of the same opinion on the subject as the committee and refused to execute the deed of assignment.

However, the creditors' committee, upon adoption of the resolution last mentioned, discontinued the operation at the plant, discharged the employees and stopped all operating expenses, but held on to the custody of the property of the corporation, as aforesaid, until the receiver was appointed in this suit.

*Don P. Halsey* and *S. H. Williams,* for the appellants.

*A. B. Percy* and *Harper & Goodman,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The question presented by the assignments of error on which the decision of the case depends is the following:

[1] 1. Did the appellants, Martin and Reid, acting as members of, or as authorized by the creditors' committee, even if they acted in good faith with respect to the belief that they have the right so to do, have the authority from the corporation to make the application of the sums of money, refunded by them, respectively, under the ruling of the State Corporation Commission, to the two debts of the corporation on which they were bound as sureties, and thus give such debts preference, *pro tanto,* as to and to the extent of such money over the other outstanding debts of the corporation, and thus lessen their personal liability for the payment of such debts in the event that the assets of the corporation should prove insufficient to pay all of its debts in full?

The question must be answered in the negative.

It is apparent from the resolution of the board of directors which appointed the creditors' committee that it did not undertake to impose upon the committee all of the duties or to confer upon the committee all of the powers of the board of directors; but only a limited duty and limited powers. The sole duty imposed, as set out in the resolution, was "to take charge of the property and conduct the operation of the corporation;" and it is manifest from the other terms of the resolution that the powers conferred were limited to those expressly named,

or conferred by necessary implication, which were all such only as were incident to the custody of the assets, the borrowing of money to increase the working capital, and the conduct of the current operations of the corporation thereafter by the committee, in the "due course of business," and necessary to enable the committee to discharge the aforesaid duty. They did not embrace the power to distribute the assets of the corporation in the payment of debts of the corporation existing when the committee was appointed, or any part or parts of such debts. The debts in question were incurred by the corporation prior to the appointment of the committee. Hence, it is plain that neither the appellants, Martin and Reid, acting as members of the committee, or as authorized by the committee, had any authority from the corporation to make the application of the refunded money in question, if that money belonged to the corporation.

[2] In 39 Cyc. 296, this is said: " * * good faith is no defense where the trustee has arbitrarily overstepped the bounds of his authority." Citing the following mentioned cases of *Gibney* v. *Allen* and *Pennington* v. *Seal.*

In *Gibney* v. *Allen*, 156 Mich. 301, 120 N. W. 811, on a bill filed by beneficiaries under a will to set aside a deed executed by a trustee named in the will without authority, it is held that good faith on the part of the trustee is no defense. On this subject the court said this: "* * good faith is a defense only where a trustee, acting within the limits of his powers, with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where a trustee disregards the limits placed upon his powers by law or by the trust instrument. 28 Am. & Eng. Ency. of Law (2d ed.), p. 1063, and cases cited."

In *Pennington* v. *Seal*, 49 Miss. 518, a guardian lent out money of the ward without the previous sanction of court required by the statute, and the money was lost by the insolvency of the person borrowing the money. Held: The guardian must pay back the money. The court said: "*  *  we are satisfied that the guardian, in this matter, was actuated by good faith and pure motives  *  *. If a trustee, whether his duties are defined by law or by instructions given by an individual who may appoint him, is under a duty to follow the directions of the law or the instructions given by the person who appoints him; and if he exceeds his authority or disobeys the rules prescribed for him, he acts at his peril and undertakes responsibility for the consequences."

In *Pannill's Adm'r* v. *Calloway's Committee*, 78 Va. 387, it is held that one who assumes to act as a trustee in relation to trust property, without just authority, is held personally liable for the estate of the *cestui que trust* converted by him to his own use. Upon this subject the court says this: "One who assumes to act in relation to trust property without just authority, however bona fide may be his conduct, shall be held responsible both for the capital and the income, to the same extent as if he had been *de jure trustee*."

[3] That the money mentioned did belong to the corporation is manifest. It is true that, as an original proposition, the corporation had no right to compel the appellants, Martin and Reid, to pay back such money. The blue sky law did not confer upon the corporation any such right. Section 18 of that law, however, expressly provides that it shall be construed to give the State Corporation Commission "power  *  *  to require the promoters of such securities" (that is, such stock as was sold by said appellants), "shall honestly

apply the proceeds of the sale thereof to the purpose for which such securities are sold.'' This statute, therefore, empowered the State Corporation Commission to require the appellants to apply the commissions they had retained to the purpose for which the stock was sold. As appears in evidence, that purpose was to supply the general needs of the corporation for money as capital; not the need to pay any particular debt or debts, or any part or parts thereof. Hence, when the Commission ruled that the said appellees must return the portions of the commissions aforesaid, the legal effect of the requirement was that such money be returned to the treasurer of the corporation as assets of the corporation; and when such appellees did in fact make such return by their checks payable to such treasurer and the checks were received by the latter, the money became part and parcel of the general assets of the corporation, of which, under the provisions of the aforesaid resolution appointing the creditors' committee, that committee was ''to take charge,'' and thus it became a trust fund belonging to the corporation under the control of the committee and held in trust by it as provided in such resolution; and which neither the appellants, in any capacity whatsoever, nor the creditors' committee, had any authority to distribute among the creditors whose debts arose prior to the appointment of the committee. The aforesaid application of such money was, therefore, a wrongful conversion of it by appellants, Martin and Reid, for their own use and benefit, in breach of the aforesaid trust, which rendered them personally liable, and, since they acted in concert in the matter, rendered them jointly and severally liable therefor; which was, in substance, the holding of the decree under review.

[4] It is urged in behalf of the appellants, Martin and Reid, that the corporation was not insolvent at the time the aforesaid application of the money in question was made to the aforesaid payments on account of the two debts of the corporation in preference to other debts of the corporation; and the well settled rule is invoked that it is not fraudulent *per se,* under the State law on the subject, even for an insolvent debtor to prefer certain creditors in the distribution of his assets, if the preference is made in good faith, with no actual fraudulent intent; and it is urged that, in the case of a corporation, the directors, acting in good faith and without any fraudulent intent, may make preferences between creditors of the corporation, even in their own favor, where the directors are themselves creditors of the corporation—citing *Planters' Bank* v. *Whittle,* 78 Va. 737, and other authority to the same effect. But these well settled principles have no application to the case before us, for the reason that we have not before us the case of any preference made or attempted by the debtor corporation in the distribution of its assets between its creditors, through the action of its board of directors, or otherwise. We have before us the attempt of members of a committee of the board of directors of the debtor corporation to act for the corporation in making such a preference, without any authority whatsoever so to do—a wholly different situation. And such being the situation it is immaterial for us to determine whether, in the case before us, the corporation was or was not insolvent at the time the wrongful conversion of assets aforesaid was made; or whether or not the conversion was made with fraudulent intent on the part of the appellants. In any case, the conversion being without authority and in breach of trust, as aforesaid, it was wrongful, and having been made by appellants

acting in concert, they are jointly and severally liable. Hence, the decree under review so holding will be affirmed; but nothing said in this opinion is to be construed as intended to affect any right which the appellants, Reid and Martin, may have, by way of subrogation, to assert against the corporation so much of the debts of the banks as was paid by them.

*Affirmed.*