# Richmond

GEORGE F. DARDEN, JR. v. GEORGE G. LEE COMPANY, INCORPORATED.

March 4, 1963.

Record No. 5542.

Present, All the Justices.

The opinion states the case.

*William C. Worthington* (*Worthington, White and Harper*, on brief), for the appellant.

*J. Hume Taylor, Jr. (Rixey and Rixey,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

■ George F. Darden, Jr. was granted an appeal from a final decree entered in the circuit court on March 14, 1962, which allegedly favored George G. Lee Co., Incorporated.

By stipulation of counsel the petition for an attachment filed by the Lee Company was treated as a bill of complaint to set aside as fraudulent an assignment of certain accounts receivable due Ricks Plumbing and Heating Co., Inc. and assigned to Darden.

The case was heard *ore tenus* by the chancellor and it is agreed by both parties that the chancellor's findings of fact are substantially correct. The court found:

In the latter part of 1958 the Ricks Company went through a creditors' arrangement under the Federal Bankruptcy Act, at which time Darden acted as attorney for the Ricks Company. In this proceeding Darden personally put up $22,500, and the creditors of the corporation, of which George G. Lee Co., Inc. was one, were paid off at the rate of approximately forty per cent.

In return for the $22,500 advanced by Darden, he took notes from the Ricks Company and also received fifty per cent of its common stock. Darden was elected a director and secretary-treasurer of the company. The company continued doing business, purchasing its plumbing materials and supplies from the Lee Company.

On June 11, 1960, it was ascertained that the Ricks Company was unable to pay its obligations, whereupon Darden closed the doors of the corporation and took the key. The corporation was insolvent and Darden made the decision to liquidate the business. At this time there were only two creditors of the corporation—one was Darden to whom the corporation owed $22,500 as evidenced by the notes above referred to; the other was the Lee Company of which R. Lee Page was president. The Ricks Company was indebted to the Lee Company in the amount of $20,000 for materials and supplies.

The only assets of the Ricks Company were the accounts receivable and an inventory of materials which had been purchased from the Lee Company and carried on the books of the Ricks Company at approximately $18,000.

On the day the Ricks Company closed its doors there was a meeting at its place of business, attended by Darden and R. Lee Page, president of the Lee Company. At this meeting there was an agreement made whereby the Lee Company was to accept the return of materials and supplies from the Ricks Company for credit to its account. These materials and supplies constituted the entire inventory of the Ricks Company.

It was further agreed that the sum of $5,495.58 due the Ricks Company for plumbing work done at the Plantation Motel would be paid to the Lee Company which had furnished the materials for the motel job. The agreements were reduced to writing on June 17, 1960.

When the inventory of materials and supplies was returned to the Lee Company the value was ascertained to be $5,000 instead of the $18,000 valuation carried on the books of the Ricks Company. The $5,000 valuation was approved by Darden.

When Darden found that the credit for the returned materials fell short of satisfying the indebtedness of the Ricks Company to the Lee Company, he arranged to have all of the accounts receivable of the Ricks Company assigned to him. He discussed the assignment with Paul Fox, the attorney who represented George E. Ricks, the other principal stockholder of the Ricks Company.

On July 28, 1960, Darden resigned as secretary-treasurer of the Ricks Company and on the same day had all of the accounts receivable of the Ricks Company assigned to him. These accounts constituted the sole remaining assets of the insolvent corporation and left nothing from which the Lee Company could satisfy the amount due it.

The court found that the amount due the Lee Company as of July 28, 1960, was $9,605.42, after allowing credits of $5,000 for the materials returned, and $5,495.58 received by the Lee Company from the Plantation Motel job.

The court further found that the accounts receivable assigned to Darden amounted to $12,235.49, of which he had collected $5,681.43.

The court, in its opinion, said:

"It appears clear from the evidence that at the time the defendant

Darden arranged for the assignment to himself of the accounts receivable of the Ricks Corporation that the Corporation was insolvent, that he knew there were no other assets out of which the corporation's creditor, Lee Company, could satisfy its claim of $9,604.42, and that he [Darden] was in control of the financial affairs of the corporation."

\*    \*    \*    \*    \*    \*    \*

"Accordingly, it is the conclusion of this court that the assignment of the accounts receivable from the Ricks Corporation to the defendant Darden should be set aside, and that therefrom the claims of the plaintiff Lee Company and the defendant Darden should be satisfied on a pro rata basis according to the ratio of their respective claims ($9,604 and $22,500) to the total of the two claims ($32,104). That is, the Lee Company is entitled to 30% and the defendant Darden to 70% of the proceeds of the accounts receivable. Since it appears that the defendant Darden has collected $5,681.43 of the accounts receivable through his own individual efforts, he should be allowed a collection fee of 15% on the amount collected."

Darden says there are two questions for decision. These will be treated in the order presented. The first question is:

"1. Is an assignment of accounts receivable by an insolvent corporation to a creditor in partial satisfaction of an antecedent debt avoidable by another creditor as a fraudulent conveyance in absence of actual fraud, simply because the assignee-creditor is a stockholder of the debtor corporation and has previously been an officer and director?"

Darden argues in his brief that the question has been answered by our court where the issue was "squarely presented in 1884 in *Planters Bank* v. *Whittle*, 78 Va. 737."

We find the factual situations in the instant case and the *Planters Bank* case to be different. The facts in the instant case are more in keeping with those in *Certain-Teed Products Corp.* v. *Wallinger*, (C.C.A. 4th Cir. 1937) 89 F. 2d 427, 435, where it is said:

"It is no answer to say that in Virginia, a preferential transfer by an insolvent corporation to a stockholder has been held permissible in such cases as *Alexandria Savings Inst.* v. *Thomas*, 70 Va. (29 Grat.) 483; *Planters' Bank* v. *Whittle*, 78 Va. 737; *Reid* v. *Perrow*, 136 Va. 449, 118 S. E. 120; *Beck* v. *Semones' Adm'r*, 145 Va. 429,

134 S. E. 677, for these cases do not go so far as to authorize a preference which has been obtained by a creditor in complete control of the affairs of a corporate debtor. The rule generally prevailing under such circumstances is to the contrary. *Richardson* v. *Green*, 133 U. S. 30, 10 S. Ct. 280, 33 L. ed. 516; *Sutton Mfg. Co.* v. *Hutchinson* (C.C.A. 63 F. 496; see, also, *Jackman* v. *Newbold*, (C.C.A.) 28 F. (2d) 107, 62 A.L.R. 729; *Wiggington* v. *Auburn Wagon Co.*, (C.C.A.) 33 F. (2d) 496, 500."

The court, in the *Certain-Teed Products* case, at pages 434 and 435, held that the obvious effect of the preferences was to hinder the creditors of the corporation. By the same token, the effect of the preference in the case at bar was to hinder the Lee Company, the creditor of the Ricks Company.

Merely because the preference hinders creditors is not sufficient reason under the Virginia statute[1] to set aside an assignment as it applies to a purchaser for a valuable consideration. However, it is sufficient if the assignee (Darden in this case) had notice of the fact that the assignment was made with "intent to hinder."

We agree with the lower court's opinion where it is said:

"The obvious and inevitable effect of this transaction was to delay and hinder the creditor, Lee Company, from satisfying its claim. Because of his position, the defendant Darden is chargeable with that intent. Under Sec. 55-80 of the Code, a conveyance or assignment may be made with intent to hinder or delay, without any intent absolutely to defraud. Either intent is sufficient. Under such circumstances there is legal or constructive fraud which renders the transaction void as to creditors. (See *Quarles* v. *Kerr*, 14 Gratt. (55 Va.) 48)".

The weight of authority seems to be that the directors of an insolvent corporation, who are also creditors of the corporation, have no right to grant themselves a preference or an advantage over other creditors in the payment of their claims. This rule is based upon simple justice. *Stuart* v. *Larson* (C.C.A. 8 Cir. 1924), 298 F. 223, 227; Fletcher on Corporations (Perm. Ed.) Vol. 15-A, § 7468; Anno. 48 A.L.R. 479.

The evidence in this case clearly shows that when Darden created

---

[1] Section 55-80, Code of Virginia, 1959 Replacement Volume.

the assignment of the accounts receivable to himself on July 28, 1960, he was in complete control of the affairs of the Ricks Company so as to bring him under the rule laid down in the *Certain-Teed Products* case rather than our holding in the *Planters Bank* case.

We agree with the lower court that:

"It appears clear from the evidence that at the time defendant Darden arranged for the assignment to himself of the accounts receivable of the Ricks Corporation that the corporation was insolvent, [and] that he knew there were no other assets out of which the corporation's creditor, Lee Company, could satisfy its claim * * *."

The conclusions of the lower court on questions of fact in cases where the evidence has been heard *ore tenus* are entitled to peculiar weight and consideration, and we should accept them just as we accept a jury's verdict sustained by evidence which it might have believed. *First National Bank* v. *Roanoke Oil Co.*, 169 Va. 99, 116, 192 S. E. 764.

The second question is:

"2. Assuming that the lower court has jurisdiction in liquidation of the corporation, are Lee's rights to ratable dividends fixed as of the beginning of the liquidation or may Lee first receive liquidating dividends of 50% of its claim prior to any dividend to Darden and then demand that Darden share ratably in dividends thereafter realized?"

Here Darden argues in his brief that "if the court decides that Lee is entitled to recover 30% of the conveyance as fraudulent, then appellant says that the 30% has been wrongfully computed in Lee's favor, and that Lee is not entitled to any further dividends."

It is thus contended that the Lee Company should be charged with $10,733.93, which has already been applied to its $20,000 debt. This amount Darden argues equals 53.7% of the Lee Company's claim, and therefore it should receive no further distribution.

It is agreed that "the power of the lower court to decree liquidating dividends is not in question on this appeal." It will be remembered that the lower court was asked to set aside the assignment of the accounts receivable, an event that occurred on July 28, 1960. Having set the assignment aside, the court used "its undisputed power" to

place the two parties in the same position they occupied on that date, when the court found as a fact, which is undisputed, that Darden was entitled to $22,500 and the Lee Company to $9,604. Thus the operative point in time with which the lower court was dealing was the date of the assignment of the accounts receivable which the court set aside. Having placed the corporate affairs in *statu quo* as of the time of the assignment, the court put the parties on an equal footing as of that date. This we hold was equitable and proper.

We find no error in the decree appealed from, and the same is

*Affirmed.*