## Richmond

Thomas D. Gough, Et Al. v. Alvah O. Conley, Et Al.

April 26, 1965.

Record No. 5931.

Present, All the Justices.

*William B. McLeod* (*Dunton, McLeod & Simmons*, on brief), for the appellants.

*W. Garland Clarke* and *Dixon L. Foster* (*Norris, Foster & Clarke,* on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This suit was brought by Alvah O. Conley and twenty-one others, complainants, against Thomas D. Gough and wife and Charles F. Ball, Jr., and wife, defendants, to have a declaration of their rights with respect to a water system in the community of Ditchley, Northumberland county, and for an injunction.

The bill alleged that in 1934 a water system was established in the Ditchley area and the defendants granted to Ditchley, Incorporated, which was owned entirely by Mrs. Jessie Ball duPont, easements for water lines over their properties. These properties lay between the mansion house of Ditchley, an historic home, and a strongly-flowing artesian well, on a point of land owned by Mrs. duPont east of the defendants' properties.

Exhibited with the bill were copies of two deeds dated December 14, 1934, duly acknowledged and recorded, one from Thomas D. Gough and Daisy W. Gough, his wife, and the other from Charles F. Ball, Jr., and Eleanor Ball, his wife. Both deeds granted to Ditchley, Inc., its successors and assigns, for a consideration of one dollar, "the right to construct, operate, and maintain its or their pipe line, taps, valve boxes and other fixtures for operating its water line or main, at a depth of not less than 18 inches below surface" across the land owned by the grantors, and also under any public road in which the grantors had any right or interest, "and to permit the attachment of distribution pipe lines of any other person or company to said water line or main."

The bill further alleged that in 1940 Ditchley, Inc., conveyed the water system to Mrs. duPont, who by agreement dated December 3, 1962, leased the system to Ditchley Water Works, Inc., in order that it might make necessary improvements and provide a new well to supply water to the residents of the area at the cost of the users; but, complainants alleged, they had been told by the defendant Thomas D. Gough that they had no right to operate or maintain the water lines formerly used by Ditchley and Mrs. duPont and would not be allowed to do so.

The bill prayed for an injunction to restrain the defendants from interfering with the operation of the water system and for a construc-

tion of the easements referred to, and a determination of the rights and duties of the parties.

The defendants filed their answer in which they admitted the granting of the easements and stated that the consideration therefor was the "undertaking" by Ditchley, Inc., for itself and its successors, to furnish free water to the defendants, and that their failure to do so would "void the said easements," and that the continuance of the easements depended upon supplying water to the defendants at no charge, but that demand was being made on defendants to pay for connection fees and water; and, further, that the lateral line across the property of defendant Daisy W. Gough was there by license that could be revoked at any time, and that they reserved the right to revoke such license if they were denied free water. Defendants prayed that their contracts for free water be construed and that the complainants be enjoined from interfering with their water supply and from making any charge against the defendants therefor.

The court heard *ore tenus* the evidence offered by the parties and in its decree held that the defendants had been fully paid for said easements; that the water system in use had become inadequate and that Ditchley Water Works, Inc., had been established as a non-profit corporation to improve and operate the water facilities in the area, and that improper interference therewith would result in irreparable injury to the complainants; that the lateral water line of said system through the property of defendant Daisy W. Gough was installed as a joint undertaking at the joint expense of the users and should not be interfered with.

It was accordingly decreed that the defendants were not entitled to receive free water from the new system and they were enjoined from interfering with its operation and maintenance. Defendants appeal and assert that the decree is not supported by the evidence and is contrary to the law.

Under their assignments of error the defendants contend, first, that they are entitled to have free water for certain structures on their property "so long as the pipelines crossing their properties remain in use," and that the court erred in failing to enforce such right.

By their deeds signed, sealed and recorded, the defendants granted to Ditchley, Inc., and its successors, the right to construct, operate and maintain the pipeline through their properties. These grants cannot now be defeated by showing that as part of the agreement the grantors were to receive free water. Parol evidence is admissible to show the true consideration for the deeds, but not to alter or con-

tradict their legal effect. *Sale* v. *Figg*, 164 Va. 402, 180 S.E. 173; *Otey* v. *Oakey*, 157 Va. 314, 160 S.E. 8; *Harvey* v. *Alexander*, 22 Va. (1 Rand.) 219; 5 Mich. Jur., Deeds, § 14, p. 701; 7 Mich. Jur., Evidence, § 159, pp. 519-20.

Carter M. Keane, one of complainants and president of Ditchley Water Works, Inc., testified that he was an architectural engineer employed by Mrs. duPont to restore the Ditchley house. He said that in 1934 Mr. duPont instructed him to design a water system to bring water from the strongly-flowing well on the point to the Ditchley house, and that the people in the area could tap on to the line and use the water without charge "so long as we operate on that basis." Keane accordingly proceeded to get the easements for the pipeline over the properties of Mrs. Gough and the Balls.

The testimony of Keane was that the line was completed in 1935, was operated thereafter at the expense of Mrs. duPont, and water therefrom supplied free of charge to those who connected with it until it began to be discolored and became unfit for use. On investigation it was decided that the best solution was to drill another well. Mrs. duPont was not willing to continue to finance the project and in December 1962 she executed a lease of the water system to Ditchley Water Works, Inc., which undertook to operate it and relieve her from further liability. A plan was then worked out for operating the system on a basis of making connection and service charges to the users. Defendant Gough refused to pay and stated he expected to continue to get free water at his home and oyster house and if he did not he would remove the pipes.

Keane testified that all who used the water were supposed to make application to him for permits to connect with the system, but some got permission direct from Mrs. duPont. He introduced in evidence an application by one of the users which contained this provision: "It is further understood and mutually agreed that I am to have the use of this service without charge as long as the system is operated on the present basis." Keane said this provision applied to all, including defendants, and that he explained that to them. He testified that free water was not consideration for the easements and was not discussed as part of them; but that he told all of the people, including the defendants, that they were going to get free water.

There was shown to him and filed as an exhibit by the defendants a writing dated December 14, 1934, signed by Ditchley, Inc., and defendant Charles F. Ball, Jr., in which it was stated that it was understood and agreed that Ditchley, Inc., would install a tap connection

and valve box in the water main which crossed the Ball property and that Ball might use water from said main without any charge so long as he did not abuse the service; and said agreement further provided: "It is further understood and mutually agreed that the clause in the contract referring to no charge for water will exist as long as this system is operated on these [*sic*] basis."

Charles F. Ball, Jr., testified that he refused to sign the easement agreement until Keane agreed that he should have free water and that he signed the contract for free water at the same time he signed the easement agreement, and that on the same day Keane told him that he was going to give the Goughs and the Neville Balls the same agreement. He said he took the contract for free water to mean that he was to have free water as long as water ran through the line, regardless of who owned the system. Mrs. Ball testified she was present when the easement and contract were signed and that the agreement was that they should have free water.

Thomas D. Gough testified that he had the same agreement as Ball but not in writing; that he asked Keane for a written agreement and it was promised but not delivered. All he wanted, he said, was free water at his residence and oyster house, which was promised to him and he felt he was entitled to it as long as water goes through the pipeline, and that if he sold his property the purchaser would have the same privilege.

Neville G. Ball, who owned the land adjoining that of Charles F. Ball, Jr., his brother, testified that he gave an easement through his land and it was his understanding that he would be allowed to connect with the pipe and have free use of water. He had previously sold his property and was not a party to the suit.

After hearing the evidence the trial court found the facts to be that the situation existing when the suit was brought was entirely different from that when the easements were granted in 1934; that the evidence showed that the water from the well being used then had become in such condition now that people could not be expected to drink it or use it for other purposes, and that it had become necessary to obtain a new supply; that there was little difference in the testimony of the parties and the question presented was what the contract for free water meant; that there was no testimony that the defendants were to have free water as long as the pipes remained in the ground and water from any source ran through them, but that the contract provided for a right to free water so long as the system

was operated on the present basis, meaning the basis existing when the easements were granted.

The evidence is sufficient to support the court's conclusions. See *Darden* v. *Lee Company, Inc.*, 204 Va. 108, 113, 129 S.E.2d 897, 900. It is obvious that the free water was not for an unlimited time. This unmistakably appears from the paragraph of the written agreement put in evidence by the defendants. The words "as long as" in that paragraph are words of limitation. The limitation is the period during which "this system" is operated on "these basis." The reference is necessarily to the system and the basis of operating it that existed at the time of the contract. The system now proposed is not that system. The proposed system includes a new and different well with improvements, and a very different method of financing, *i.e.*, by the users of the system instead of Mrs. duPont alone.

■ Defendants next contend that the court erred in enjoining Mr. and Mrs. Gough from revoking "their parol license for the maintenance of a lateral pipeline." This refers to the pipeline which connects with the main line and carries water to the Gough residence and oyster house (the latter being not now in use), and to the houses of complainant Erwin and others through the land of the Goughs and installed with their permission. These lines are part of the water system in controversy and were installed as a joint enterprise, with the expense shared by the Goughs and those to be served by the lines.

Gough testified that this lateral line was put in with his consent; that the other users provided the pipe and he and they built the line; that he had never objected to anybody using the line and did not now, and did not feel that he had a right to dig it up. In addition it is to be noted that the easement rights granted by Gough by his deed included the right "to permit the attachment of distribution pipe lines of any other person or company to said water line or main."

Under the stated circumstances the Goughs are estopped from revoking the rights so granted and are not entitled to have these lines excluded from the injunction which restrained the defendants from interfering with the operation and maintenance of the water system of which these lines are a part. *Buckles* v. *Kennedy Coal Corp.*, 134 Va. 1, 114 S.E. 233; *Carpenter* v. *Stapleton*, 169 Va. 22, 192 S.E. 792; 53 C.J.S., Licenses, § 90, p. 816; 1 Minor on Real Property, 2d ed., § 132.

Defendants assert lastly that the court erred in the admission of

evidence relating to free water service granted to others than the defendants, and evidence as to whether there was need for a new well. The first was admissible with reference to the pattern of operation of the original water system, and the second was pertinent to the question of the limitation of the free water agreement.

The decree appealed from is

*Affirmed.*

GORDON, J., dissenting.

I cannot agree there has been a change in the "bases" referred to in the contract dated December 14, 1934 between the Appellant Charles F. Ball, Jr., and Ditchley, Incorporated.

The Appellees contend that the "bases" have changed in that water is to be supplied from a new well and the water system is to be operated by a non-profit organization, with connection and service charges to the users. The Appellant Ball contends that the "bases" are the same now as when the contract was entered into: water is still to be transmitted through a pipe across his property. He claims the right to free water so long as the pipe crosses his property or, rather, the right to tap the pipe on his property and draw free water for his use so long as the water is available from this tapping. In other words, the Appellant Ball says that free water is the price stipulated in the contract for continued use of his land for the transmission of water; that his right to free water can be eliminated by the relocation of the line so that the water no longer passes through his land.

To resolve the question we must, of course, consider first the language of the contract; moreover, in my opinion, we should stop there unless the words are ambiguous. The entire contract, except for the signatures, reads:

"It is hereby understood and agreed that DITCHLEY, INCORPORATED will install a tap connection, size one-half inch, together with a valve box in their water main which crosses the property of C. F. Ball, Jr., location of same to be designated by said property owner. It is further agreed that the said C. F. Ball, Jr. may at any time connect to said water main; that he may use water from the aforementioned main without any charge so long as he does not abuse the service.

"It is further understood and mutually agreed that the clause in the contract referring to no charge for water will exist as long as this system is operated on these basis.

"DITCHLEY, INCORPORATED reserves the right to make semi-annual inspection of any and all plumbing connected and operated from their water mains." [The last two words of the second paragraph were quoted in the opinion of the trial judge as "these bases". Although I believe it more probable that "this basis" was intended, it will be assumed the words should read "these bases".]

The bases referred to in the contract are "these" bases; by the terms of the contract, Ball is to have free water so long as the system is operated on "these" bases. The word "these" by definition means something that has been referred to. And I should think it obvious that a writer who uses "these" intends to refer to something he has already said in that writing, be it an editorial, treatise or other form, including a legal document. If that be so, what has been referred to, before "these bases", in the Ball contract? The only previous reference in the contract is to the agreement that Ditchley, Incorporated would install a connection to its water line that was to cross the property of Charles F. Ball, Jr., and that Ball could use the water from this main, without any charge for the water so long as Ball did not abuse the service. Quite significant is what the preceding description of "these bases" does not refer to. It does not refer to a well or the source of the water, nor does it refer to the maintenance or operation of the water system or the charges to be made to other users of the water. Yet, these are the only changed bases disclosed by the evidence, and Ball's contract is now being avoided because of circumstances not mentioned or referred to in the writing.* In my opinion it should not be so avoided. I find the language of the contract unambiguous, and that the bases referred to in the contract, the transmission of water across Ball's property, have not changed.

Next, on the question whether the Ball contract can be enforced according to its terms, despite the contemporaneous grant of an easement to Ditchley, Incorporated for the stated consideration of $1.00 paid to Ball: I believe that *Sale* v. *Figg*, 164 Va. 402, 180 S.E. 173, cited in the majority opinion, is ample authority for the proposition that the collateral undertakings set forth in the Ball contract were not merged into the grant of easement, and that these undertakings are enforceable. Moreover, in my opinion, the Ball contract does not alter or contradict the legal effect of the grant of easement, anymore

---

* True, the contract does refer to Ditchley, Incorporated, which no longer owns the system. But Appellees' counsel properly conceded at oral argument that a change of ownership was insufficient to avoid Ball's rights.

than a purchase money deed of trust should be held to alter or contradict a conveyance in fee simple, absolute on its face.

My views would necessitate a reversal of the decree as to Charles F. Ball, Jr. and wife. The majority did not reach the point whether oral agreements between Ditchley, Incorporated and other Appellants-landowners were sufficiently proved or enforceable, and I believe no purpose would be served by a discussion of that question here.