Frank E. SELLERS, Transferee of the Assets of Norpaco Builders, Inc., Transferor, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 78–1263.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1979.

Decided Feb. 15, 1979.

Frank E. Sellers, pro se.

Stanley S. Shaw, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER,* Circuit Judge, and JACK R. MILLER, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

* Following oral hearing, Judge Winter recused himself and did not participate in the decision.

MILLER, Judge:

This is an appeal from the decision of the United States Tax Court entered November 30, 1977 (opinion dated March 21, 1977, ¶ 77,070 P–H Memo TC) that appellant is liable, as a transferee, for deficiencies in income taxes and additions to tax under Sections 6651(a) and 6653(a),[1] of Norpaco Builders, Inc. (hereinafter "Norpaco") for calendar years 1965 and 1966 totaling $1,643.53, plus interest as provided by law.[2] We affirm.

During the years involved, Frank E. Sellers was a resident of Verona, Virginia, and filed joint income tax returns with his wife, Polly Sellers, with the Internal Revenue Service at Richmond, Virginia. He was the president and sole stockholder of Norpaco, a Virginia corporation, which was chartered on January 11, 1965, and had its charter revoked on June 2, 1969 for nonpayment of franchise taxes. In *Norpaco Builders, Inc. v. Commissioner, supra* note 2, we sustained the Tax Court's determination that Norpaco realized unreported gains from the sales of improved real estate amounting to $2,232.45 for 1965 and $3,650.00 for 1966.[3]

It is the government's position that the Tax Court correctly held that Frank E. Sellers received these gains from Norpaco as a transferee for purposes of Section 6901(a)(1)(A)(i)[4] and, therefore, is liable for the corporation's income taxes and additions to tax, plus interest, that arose from the gains. It is Sellers' contention that none of the proceeds from the involved real estate sales were received by him and that all of the proceeds went to one Charles D. Norton. Sellers testified that he and Norpaco represented Norton as agents or nominees in the real estate transactions. However, the Tax Court found that Sellers' testimony on this point was "unsupported." It also found that various ledger sheets placed in evidence by Sellers were of "no probative value." Sellers argues that these show that he did not receive any proceeds from the real estate sales. However, the Tax Court observed: "petitioner neglected to enlighten us as to what any of the specific entries meant, or even what the accounts were supposed to represent."

■ Sellers' contention that he received none of the proceeds from the sales appears to primarily rest on the Tax Court's findings that Norpaco did not maintain its own bank account and that its transactions were handled through an account of its president—a Frank E. Sellers "Attorney" account. However, it is these very findings that enabled the government to establish a prima facie case that Sellers received the proceeds from the involved real estate sales as a transferee, thus meeting its burden of proof under Section 6902(a).[5] In turn, Sell-

---

1. Statutory references are to the Internal Revenue Code of 1954 (26 U.S.C.), as amended and in effect during the years involved.

2. In an unpublished per curiam opinion, *Norpaco Builders, Inc. v. Commissioner*, No. 78–1264, decided concurrently herewith, this court affirmed the decision of the Tax Court sustaining these deficiencies, plus interest, against Norpaco.

3. Norpaco filed a delinquent income tax return for 1965 showing no sales and no profits or losses; it did not file a 1966 return.

4. Section 6901(a)(1)(A)(i) provides in pertinent part:

   (a) Method of collection.—The amounts of the following liabilities shall . . . be as-

sessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
   (1) Income, estate, and gift taxes.—
   (A) Transferees.—The liability, at law or in equity, of a transferee of property—
   (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes).

5. Section 6902(a) provides:
   (a) Burden of Proof.—In proceedings before the Tax Court the burden of proof shall be upon the Secretary or his delegate to show that a petitioner is liable as a transferee of property of the taxpayer, but not to show that the taxpayer was liable for the tax.

ers failed to respond to his burden of going forward with objective evidence, for the Tax Court specifically found that the evidence included no bank statements or checks or other records of any kind relating to the "Attorney" account which might have enabled him to meet his burden. Apropos the government's prima facie case, it should be emphasized that, for purposes of Section 6901(a)(1)(A)(i), *supra*, the fact that the bank account was labeled "Attorney" did not, without more, establish that it was a fiduciary account, or that Sellers had a nonbeneficial ownership in the monies received, or that the account was a mere conduit through which the monies passed to Norton. *See Leon G. Grieb*, 36 T.C. 156, 165 (1961); *C. A. Hutton*, 21 B.T.A. 101 (1930), *aff'd* 59 F.2d 66 (9th Cir. 1932); *Estate of Frank Work*, 16 T.C. 863 (1951). To hold otherwise would permit frustration of the collection of a corporation's taxes by merely attaching a label to a bank account under the unfettered control of a sole stockholder of a corporation. In cases involving corporate distributions, the substance, not the form, controls. 9 Mertens Law of Federal Income Taxation (1977) § 53.15. The Tax Court was amply justified in declaring:

> [W]e think the facts of record and reasonable inferences therefrom are sufficient for us to find that Norpaco's profits found their way into petitioner's possession through his bank account.

There still remains the matter of whether, under Section 6901(a), the government can enforce collection of Norpaco's liabilities from Sellers as a "transferee." This depends on whether he is liable in law or equity under the law of the State of Virginia. *See Commissioner v. Stern*, 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958).

■ Section 55–81, Va. Code Ann. (1950), provided in pertinent part:

§ 55–81. *Voluntary Gifts, etc., voided as to prior creditors.*—

Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law . . . shall be void as to creditors whose debts shall have been contracted at the time it was made . . . . .

In *C. D. Construction Corp. v. Commissioner*, 451 F.2d 470 (4th Cir. 1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972), this court, construing Section 40–1–3, West Va. Code Ann.,[6] which was in all material respects the same as the above-quoted Virginia statute, held that a corporation which received monies from a second corporation, of which it was a stockholder, did so as a transferee subject to the liability of the second corporation for unpaid federal income taxes, and that the liability was imposed in equity for purposes of Section 6901(a)(1)(A)(i). The court quoted from *Neill v. Phinney*, 245 F.2d 645, 651 (5th Cir. 1957), as follows:

> [S]tockholders receiving property in distribution hold it subject to pro rata liabilities of the corporation. . . . The stockholders hold what they get subject to an equitable lien.

Here it has been established that Sellers received the proceeds from the real estate sales, and that there was no evidence to show that he paid any consideration to Norpaco for these proceeds. Since Norpaco's liabilities for federal income taxes and additions to tax attributable to such sales were not paid, he was clearly a transferee of the proceeds subject to an equitable lien in favor of the Commissioner of Internal Revenue. *See* 9 Mertens Law of Federal Income Taxation (1977) § 53.37 and cases cited.[7]

■ Additionally, the Tax Court found that Norpaco's transactions were conducted

---

6.  § 40–1–3. Voluntary transfers or charges.
    Every transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall

have been contracted at the time it was made
. . . . .

7.  Sellers came forward with no evidence to show that Norpaco retained assets which could

with the intent to hinder and delay those persons having claims to its assets, pointing to the significance of Sellers' reason for organizing Norpaco: to assist Norton, who was suffering financial embarrassment and owing money to numerous creditors, to remain in the construction business by having Norpaco hold title to land owned by Norton. Section 55–80, Va. Code Ann. (1950), provided in pertinent part as follows:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal . . .. with intent to delay, hinder or defraud creditors . . . from what they are or may be lawfully entitled to shall, as to such creditors . . . . be void.

Applying this statute to its findings of fact, the Tax Court held that the transfer to Sellers of the proceeds from the involved real estate sales constituted Sellers a transferee for purposes of Norpaco's deficiencies in income taxes and additions to tax. *See Darden v. George G. Lee Co.*, 204 Va. 108, 129 S.E.2d 897 (1963). We agree.

Appellant has failed to persuade us that the Tax Court's findings of fact to which reference has been made in this opinion are clearly erroneous.

The decision is affirmed.

*AFFIRMED*

have been used to pay its liabilities for income taxes and additions to tax, notwithstanding that Norpaco's 1965 return showed $30.80 cash, and notes and accounts receivable of $6,036.52 almost entirely offset by accounts payable of $5,967.42.