# CIRCUIT COURT OF HENRICO COUNTY

Northside Electric

v.

E. H. Wicker

February 16, 1979

Case No. 78C27

## By JUDGE E. BALLARD BAKER

The issue is whether a transfer of money from E. H. Wicker, Inc., to E. H. Wicker, the defendant, is a violation of Section 55-80.

The case has been presented on a Stipulation as expressed in Mr. Smithers's letter of October 2, 1978, along with Exhibit A and Exhibit B attached thereto, and the testimony of the defendant.

Briefly, the defendant is the controlling stockholder and person in E. H. Wicker, Inc. E. H. Wicker, Inc., was a general contractor engaged in building. Over a period of time prior to October, 1975, this corporation was active in the construction of Hathaway Towers, Montezuma Gardens and Melrose Gardens. In these projects J. W. Keith was also involved. Wicker, as an individual, was a partner in a partnership which, with Keith, owned Hathaway Towers Corp.

In October, 1975, a trust, in which Wicker was trustee and his children the beneficiary, borrowed $400,000.00 from the Fidelity Bank in Lynchburg. Wicker endorsed the note. This money was borrowed for the trust to acquire the equity interest of Keith in Melrose Gardens. The check covering the money was payable to E. H. Wicker, trustee. Wicker endorsed the check and deposited it to the account of E. H. Wicker, Inc., on or about October 22, 1975. When so deposited, E. H. Wicker, Inc., credited

the $400,000.00 to an obligation owing to it by J. W. Keith on the Montezuma Gardens project. Keith, at the time, was unable to pay.

At the time this $400,000.00 was deposited to the E. H. Wicker, Inc., account, the Corporation owed Northside Electric $123,215.00. The Corporation also owed E. H. Wicker $1,117,000.00 on notes payable, plus other notes. The Corporation disbursed this $400,000.00 by paying $50,000.00 to Edith Ziesmer, a noteholder, and $355,000.00 to E. H. Wicker. The disbursements to Wicker were $345,000.00 on October 22, 1975, and $10,000.00 on November 14, 1975. Wicker used the money to pay personal obligations which he says were incurred in connection with Hathaway Towers.

It appears clear that $355,000.00 did flow through the Corporation and went to E. H. Wicker personally in part payment of a debt from the Corporation to him at a time when the Corporation had other creditors. As stipulated, the Corporation was insolvent at the time.

Northside Electric relies on *Darden v. Lee Company, Inc.*, 204 Va. 108 (1963), where the following appears:

> the directors of an insolvent corporation, who are also creditors of the corporation, have no right to grant themselves a preference or an advantage over other creditors in the payment of their claims. (204 Va. 112).

Wicker says there was no intent to defraud anyone, that under negotiations then pending a third party was to take over claims arising out of Hathaway Towers, that the money borrowed by the trust was put into the Corporation's account and handled as it was on advice of his tax adviser, and was immediately paid out to repay money previously borrowed and put into Hathaway.

As to the intent element, the language in *Darden* seems to hold as a matter of law that Darden, because of his position, was chargeable with the intent to hinder or delay creditors. Commentators seem to agree with such interpretation. 49 Va. L. Rev. 1396, 1399; 21 W. & L. L. Rev. 354, 355. While some dicta to the contrary can be found, *Hutcheson v. Savings Bank*, 129 Va. 281 (1921), and while there is authority that a fraudulent intent must be shown as a matter of fact, 37 C.J.S., *Fraudulent*

*Conveyance*, sect. 110, in my view *Darden* does not permit inquiry into intent.

However, there is a second facet to this which, while perhaps relating to intent, differs from intent. This is illustrated by the following footnote found in 37 Am. Jur. 2d, *Fraudulent Conveyances*, sect. 102.

> The dealings of an insolvent debtor with a property right which his creditors, irrespective of such dealings, cannot reach is not within either the letter or the spirit of the Statute of Elizabeth. . . concerning transactions of debtors with intent to hinder, delay and defraud creditors.

The cases cited in the footnote, *Central National Bank v. Hume*, 128 U.S. 195, 9 S. Ct. 41 (1888), and *Stewart v. Platt*, 101 U.S. 731 (1879), do support the thought, though the latter case involved provisions of the bankruptcy law rather than a fraudulent conveyance statute. However, neither case is, in my judgment, comparable to the factual situation here. The rule of the cases appears expressed in 1 D. Moore, *Fraudulent Conveyances*, 90-91 (1908), as follows:

> [a] transaction by a debtor is not fraudulent as to his creditors which does not withdraw from the creditors property which was subject to their claim.

For the defendant director to prevail it must be found that the $400,000.00 was not subject to creditor claims under the circumstances. If the Corporation held the money as a trustee, agent or custodian, a strong argument could be asserted in its behalf. However, I can find no trust here as to the money, nor is there any contention of agency or of the Corporation being a custodian, though the Corporation does perhaps consider itself a conduit only. For cases involving a conduit or mediary situation, *see First National Bank v. Dwelley*, 57 Me. 223 (1881), and *Mullens v. Frazier*, 59 S.E.2d 694 (W. Va. 1950). However, neither case fits these facts.

While it may well be true that the purchase of the Keith equity in Melrose Gardens by the trust could have

been handled without running the $400,000.00 through E. H. Wicker, Inc., only by doing so could the Keith debt to the Corporation be credited. As a result of the arrangement, a substantial account receivable of the Corporation was, in fact, paid and became an asset of the Corporation, almost immediately largely paid out to the major stockholder. Thereafter, the Corporation had no claim against Keith should he later be able to pay. And it is apparent that, at the time, Keith did have at least the Melrose Gardens equity which perhaps the Corporation could have pursued in another manner, resulting in funds for its creditors.

In my view, any payment by Keith on his debt to the Corporation would be property subject to creditors of the Corporation. In effect here, Keith was paid $400,000.00 for his equity in Melrose Gardens and agreed that the money would apply against his debt to the Corporation.

Under Darden v. Lee, I am of the view that the subsequent payment of $355,000.00 of this money to E. H. Wicker by E. H. Wicker, Inc., was in violation of Section 55-80.