# Richmond

EDGAR MARSHALL, ET ALS. V. FREDERICKSBURG LUMBER COMPANY, ET ALS.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Haw & Haw,* for the appellants.

*J. F. Hall* and *Brockenbrough Lamb,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Howard L. Neff filed a bill in equity against the Fredericksburg Lumber Company, Incorporated, and Edgar Marshall, Ida P. Marshall, J. B. Wooddy, Virginia Gregory and N. B. Davidson, committee of Mary D. Wooddy, an insane person, the purpose of which was to establish that certain of the individuals named were in possession of funds of the corporation and to subject those funds to

the payment of the complainant's alleged debt against the corporation. The chancellor entered a decree in favor of the complainant, Neff, established the amount of corporate assets that had been diverted and rendered a personal decree against Edgar Marshall and Ida P. Marshall for $3,250.00 and interest, and against Edgar Marshall and Virginia Gregory for $1,000.00 and interest. That decree is the subject of the present appeal.

The allegations of the bill, in substance, were that Neff, in August, 1919, was a creditor of the Fredericksburg Lumber Company, Incorporated, to the extent of $11,-654.09, which in May, 1922, was reduced to judgment; that Edgar Marshall was president, Ida P. Marshall, vice-president, and J. B. Wooddy, secretary and treasurer of said corporation and that they, together with Virginia Gregory and M. D. Wooddy were the directors of said corporation and the owners of the entire capital stock; that Ida P. Marshall was the wife and Virginia Gregory the daughter of Edgar Marshall, and M. D. Wooddy was the wife of J. B. Wooddy; that 137½ shares of stock of the par value of $13,750.00 were issued by the corporation, thirty-two and one-half shares of the par value of $3,250.00 being owned by Ida P. Marshall and ten shares of the par value of $1,000.00 being owned by Virginia Gregory; that the officers and directors, with intent to defraud the complainant Neff, arranged, in the year 1919, for the payment to Ida P. Marshall and Virginia Gregory, respectively, the sums of $3,250.00 and $1,000.00 of corporate funds, the said payments being in the pretext and guise of a purchase at par by the corporation of the shares of stock held by said parties, they being wife and daughter of the president, and also directors in the corporation; the wife also being vice-president; that the corporation was insolvent at the time and the transaction was a fraud upon the rights of Neff who was a creditor. The prayer of the bill was that the officers and directors who were personally liable for said funds which had been so diverted, should be required to repay them.

The defendants filed their demurrer to the bill but it was not insisted upon. They also filed their answers. In the joint answer of Edgar Marshall, Ida P. Marshall and Virginia Gregory it was averred that the corporation was not indebted to Neff but that the amount claimed by him was due by J. B. Wooddy personally, and not by the corporation. Denial was made of all fraud. It was averred that the affairs of the corporation were handled entirely by Wooddy and the respondents denied any knowledge of them on their part. It was further averred that Wooddy was desirous of obtaining all of the stock in the corporation and that the purchase of the stock of Ida P. Marshall and Virginia Gregory was made by him for his own personal benefit and not for the corporation, and finally that the corporation was not insolvent at the time.

Mrs. M. D. Wooddy having become insane, an answer denying the allegations of the bill was filed in her behalf by her committee, N. B. Davidson.

Edgar and Ida P. Marshall and Virginia Gregory filed a plea of the two year statute of limitation (Code 1919, section 3816).

The cause came on for hearing upon the merits and the chancellor decided by decree that the demurrer be overruled; that the plea of the two year statute of limitation was not applicable and it therefore was overruled and stricken out; that the purchase of stock from Ida P. Marshall and Virginia Gregory was a purchase by the Fredericksburg Lumber Company, Incorporated, of its own stock with corporate funds; that the corporation at the time was indebted to Neff in the principal sum of $11,654.00, which had been reduced to judgment, no part of which had been paid; that the corporate funds were knowingly received by Edgar Marshall, who was the president, and that he had knowledge of the indebtedness of the corporation to Neff at the time of the transaction; that Marshall acted in the transaction for his wife, Ida P. Marshall and his daughter, Virginia Gregory, who as a result received from the corporation through Edgar

Marshall in return for their shares of stock settlements of $3,250.00 and $1,000.00 respectively; that the sale amounted to an illegal diversion of corporate funds without consideration and in fraud of the rights of Neff, an existing creditor, who has the right under such circumstances to follow and trace the funds so diverted and compel restoration to the corporation, and to subject said funds to the discharge of corporate debts.

It was further held that inasmuch as the corporation was no longer a going concern, a receiver was unnecessary, for it appeared that the diverted funds were the only assets of the corporation and Neff being the only creditor thereof, those funds could be administered for the benefit of Neff by the court without the aid of a receiver.

A personal decree was rendered against Edgar Marshall and Ida P. Marshall for $3,250.00 with interest and against Edgar Marshall and Virginia Gregory for $1,000.00 and interest.

After the court had announced its decision in this cause and had directed the preparation of the decree to carry the decision into effect, the defendants Edgar Marshall, Ida P. Marshall and Virginia Gregory filed their affidavit in which they stated that they were entitled to an issue out of chancery upon the disputed questions of fact and requested the court to submit such an issue to the jury for its determination, but the court promptly denied this request and overruled their motion. This is made the first assignment of error.

The foregoing statement of the circumstances concerning this branch of the cause, seems quite sufficient of itself to clearly show that the defendants were not entitled to an issue out of chancery. No request for such an issue was made until after the court had decided the cause and that alone would seem to be sufficient warrant for refusing to submit the issue to a jury. A litigant who has submitted his cause on the merits to a chancellor for decision and has received an adverse decision will not

then be permitted to have a jury pass upon the very facts which the chancellor has already concluded against him. It is unnecessary to restate the familiar rule in Virginia controlling issues out of chancery, nor do we think it necessary to cite the supporting authorties. There is no merit in the assignment.

■ It is next charged as error that the plea of the two year statute of limitation should not have been overruled and stricken out. A quotation from the recent case of *Anderson* v. *Bundy,* 161 Va. 1, 171 S. E. 501, 509, in which Justice Holt adopted the view of the Hon. A. C. Buchanan, the trial judge, so completely demonstrates that the two year statute is not applicable to such a cause as the present one, that we deem it sufficient to show that the chancellor was justified in striking out the plea. The quotation follows:

" 'I think the statute of limitations applicable to the cause of action is five years (Code, section 5818). It was so held in *Winston* v. *Gordon,* 115 Va. 899, 80 S. E. 756. But it is urged in defendants' brief that there has been a change of statute since that decision, that change being that section 1105e(35) of the Code of 1904, then in force, provided that the two-year limitation was on 'any liability imposed by the provisions of this act,' while the present limitation provided by section 3816 applies to 'any liability imposed by the laws of this State.' It is argued that this change signifies an intention to make the two year limitation applicable to all acts of directors as such.

" 'I do not believe the change has that significance. I doubt that it represents anything more than a change in phraseology to meet the situation caused by inserting the provision as a part of the Code enactment, and causing it to lose its identity as an act. This was originally a part of the large body of corporation law appearing as one act in the Acts of 1902-03-04, Extra Session (chapter 270). If there had been a purpose to change the law as stated in *Winston* v. *Gordon,* it is likely the revisors would have noted the change and stated the purpose. Section 1105e

(35) is not referred to in *Winston* v. *Gordon*. I think section 3816 still refers to the positive duties required of directors by the statute law.' " * * *

It is next urged that the court erred in holding that the stock sale was a fraud, and in entering a decree requiring the repayment of the purchase price of the stock by Edgar and Ida P. Marshall and Virginia Gregory, and further, in entering a personal decree against them for said purchase price.

Was Neff a creditor of the corporation in August 1919 when the sale of the stock was made? Did the corporation buy its own stock through Edgar Marshall, the president, from Ida P. Marshall, vice-president and director, and Virginia Gregory, a director, with corporate funds? An affirmative answer to these questions, which we think are determinative, will lead to an affirmation of the decree. Whether the corporation was solvent or insolvent at the time has no material bearing. When the creditor, Neff, sought to collect his debt, which had been reduced to judgment in 1922, the corporation was then execution proof and had no assets from which the judgment and execution could be satisfied.

Directing attention to the question whether or not Neff was a creditor in August 1919 when the sale of the stock was made, we find from the evidence, which is conclusive, that Neff had made prior to August 27, 1919, advances to the corporation, through drafts drawn by the corporation, discounted and credited by the bank to the account of the corporation. These aggregated $11,654.09 and were unpaid when the stock sale was consummated. In May, 1922, this debt due Neff was reduced to judgment. The judgment against the corporation is conclusive that Neff was a creditor of it. The evidence, therefore, establishes that the corporation owed Neff $11,654.09 on August 27, 1919, the date when the stock of Ida P. Marshall and Virginia Gregory was sold to the corporation.

The sale was made as already stated, while Ida P. Marshall was vice-president and director and Virginia Greg-

ory was a director. It was made through Edgar Marshall, the president. He, alone, handled the entire transaction. His wife and daughter knew nothing of the details. A sixty day note, made by the corporation for $1,000.00, payable to Virginia Gregory and endorsed by Edgar Marshall, and a ninety day note made by the corporation for $3,250.00, payable to Ida P. Marshall and endorsed by Edgar Marshall, were given for the shares. These two notes were payable at the Planters National Bank of Fredericksburg and they were paid when they became due by the corporation by its checks drawn on its funds in bank. The books of the corporation carry entries evidencing these transactions.

The stock certificates for the thirty-two and one-half shares and the ten shares respectively were found in the iron safe of the corporation at the time of the purchase and for a long period of time thereafter. They were never reissued. The notes which were given for the stock, marked "paid," were also found in the safe. The foregoing facts are established beyond doubt and are not open to serious question.

■ If notice to the officers and directors of a corporation of its indebtedness were essential in such cases, then we think the defendants here had ample notice thereof. On the books of the corporation under "notes payable" there appeared an entry which showed that Neff was a creditor. In addition to this, the evidence clearly shows that Marshall, the president, in 1919, before the notes were paid, received a letter from Mr. Willis, attorney for Neff, regarding the amount due him and asking payment.

■ The appellants, however, say that Wooddy was the purchaser of the stock and the corporation only loaned him the funds necessary for that purpose; and as evidence of the fact, they point to a check which was given by the corporation for $3,250.00 which bore the notation "Chg. to J. B. Wooddy." They claim that the corporation was due Wooddy, at the time, for past due salary, as shown by his salary account, some $4,000.00. We are not impressed with the thought that Wooddy was the pur-

chaser. While the check did bear the notation "Chg. to J. B. Wooddy" it was never, in fact, charged to him. However, there was another account between the corporation and Wooddy which disclosed that he owed the corporation on the date of the stock sale more than $6,700.00. In other words at that time if the two accounts had been balanced it would have shown Wooddy indebted to the corporation over and above the salary due him. This demonstrates that Wooddy did not pay for the stock in that manner.

The evidence further shows that the notes given by the corporation for the stock were in the possession of Marshall and that he handled them with the bank. His endorsement appears upon them, and as stated, it was through him alone that the sale was consummated and the money received.

The inescapable conclusion is that the corporation, through its president, Marshall, purchased its own stock from Ida P. Marshall and Virginia Gregory, who were directors at the time, with corporate funds.

In so far as Neff, the creditor, is concerned, the effect of the transaction was that $4,250.00 of the capital assets of the corporation and upon which he had a right to rely for the payment of his debt were diverted from corporate purposes and placed beyond his reach by the purchase of the stock. The capital assets were diminished to that extent and no consideration for those assets was received by the corporation.

What are the relative rights of a stockholder and a creditor in the assets of a corporation? Shares of stock in a corporation, before its dissolution, represent the proportion to which the shareholder is entitled in the distribution of profits arising from the operation of the business which may be made from time to time, and in the final distribution of the estate of the corporation when it ceases to exist and the estate has been fully administered, including the payment of corporate indebtedness. 7 R. C. L. p. 304. A stockholder's rights are deferred to those of a creditor in the distribution of assets. The

creditors are entitled to the full payment of their debts before the stockholder participates therein.

Unless prohibited by its charter or by statute, a corporation in Virginia has the power to purchase its own stock provided it is done in good faith and the rights of creditors are not prejudiced. *U. S. Min. Co.* v. *Camden & Driscoll,* 106 Va. 663, 56 S. E. 561, 117 Am. St. Rep. 1028; *Kennerly* v. *Columbia Chemical Corp.,* 137 Va. 240, 119 S. E. 265; *Grace Securities Co.* v. *Roberts,* 158 Va. 792, 164 S. E. 700.

But where there are existing creditors of a corporation the stockholders will not be permitted, as against those creditors, to withdraw the assets of the corporation without consideration, whether it be done through a purchase of stock by the corporation or otherwise. We repeat that a stockholder is not entitled to a share of the capital assets of a corporation until the debts have been paid. If the capital is divided, leaving any debts unpaid, every stockholder receiving his share, is in equity liable *pro rata* to contribute to the discharge of such debts out of the funds so received. Such property must be devoted, primarily, to the satisfaction of creditors and is subject to their rights; secondarily, to the stockholders, in proportion to their interests. As to it the creditors have a prior exclusive equity. In other words stockholders have no right to anything but the residuum of the capital after the payment of all corporate liabilities. Where the assets have been divided between the stockholders, a judgment creditor, after the return of an execution unsatisfied, may maintain a suit against such stockholders to charge them to the extent of the assets diverted and it is immaterial whether they received the assets by fair agreement with associates or by wrongful act. 3 Thompson Corporations, sections 2954-2956-2963.

As we have already seen, in the case at bar, no consideration whatever was received by the corporation for its assets which were turned over to the appellants.

In no jurisdiction, so far as we are able to learn,.

does a corporation possess the power to purchase its own stock if the purchase is injurious or prejudicial to existing creditors and tends to defeat them in the collection of their claims against the corporation.

This case is made stronger in favor of the creditors because the transaction here from beginning to end was negotiated by the president of the corporation, who, of course, was also a director. The other participants were directors and Ida P. Marshall, one of them, was vice-president. The dealings were had between the members of the family; husband, wife, and daughter. Marshall, the husband, was the agent. These three parties were obligated as directors to conserve the assets of the corporation and have them forthcoming for the purpose, primarily, of paying corporation debts. Instead, the result of the sale by them and the purchase of the stock by the corporation, is that the assets have, to the extent of $4,250.00, been parceled out to the directors while Neff, the creditor, finds no assets out of which his claim can be collected.

Again it is insisted by the appellants that it was encumbent upon Neff to prove that the corporation was insolvent at the time of the sale and purchase of the stock. In our view it was immaterial whether the corporation was solvent or insolvent at the time. If these appellants received the assets of the corporation, and we think they did, with knowledge that they were corporate assets, and the only consideration inuring to the corporation was the stock, then it was in effect a gift by the corporation to them of its assets, which was fraudulent as to Neff, a creditor, regardless of the solvency or insolvency of the corporation. And even if these directors had no actual knowledge of the facts, they were charged with notice of them.

It is argued that no decree should have gone against Edgar Marshall because it was not his stock which was sold and that he did not personally receive any benefit from the transaction. This is true. The evidence fails

to show that the parties were guilty of any conspiracy. Likewise it fails to show any intentional wrongdoing. At most, it only shows a constructive fraud. Edgar Marshall received no corporate funds other than as agent. They were received by Mrs. Marshall and Virginia Gregory from him. In other words, the funds diverted have been traced into the hands of Ida Marshall and Virginia Gregory, therefore they alone should be held for the funds they so received. The decree should be accordingly amended to eliminate Edgar Marshall.

Finally, it is argued that Neff was not injured or prejudiced by the transaction and therefore he has no right to complain. The answer to this is that the corporate assets, which by law were made assets for the payment of Neff's debt, were diverted from corporate purposes and found in the hands of the directors of the corporation. To the extent of the diversion, the assets were depleted and rendered unavailing for the purpose for which they were to be held, namely, to pay debts. When Neff sought to enforce the collection of his debt, which had been merged into the judgment, there were no other corporate assets available. The corporation was "execution proof." It necessarily follows that Neff was injured by the transaction and entitled to have the assets restored and made available for his debt.

The decree should be amended to read against Ida P. Marshall and Virginia Gregory, eliminating Edgar Marshall from its operation.

*Amended and affirmed.*

CHINN and HUDGINS, JJ., concurring in result.

EPES, J., dissenting.

As I understand the opinion in the case of *Grace Securities Corporation* v. *Roberts,* 158 Va. 792, 164 S. E. 700, it is therein held that in Virginia if a corporation's power to buy its own stock is not restricted by its charter, it

may buy its own stock if the interests or creditors or other stockholders be not adversely affected by the purchase; and that where it is sought to avoid a purchase of its own stock by a corporation on the ground that the interests of creditors were adversely affected thereby the burden rests upon the person asserting that creditors were adversely affected to establish that fact. My understanding also is that within the purview of the doctrine of that case the interests of the creditors must have been adversely affected at the time stock purchase was consummated and not at some time long thereafter.

In the instant case I find no evidence whatever that this corporation was insolvent at the time that it made the stock purchase which is here complained of or that after the consummation of such purchase the corporation did not have sufficient property over and above all other obligations to pay the creditors here complaining. This stock purchase took place in August, 1919. The suit was instituted in December, 1925. There is ample evidence to show that at the time this suit was instituted the Fredericksburg Lumber Company, Inc., was insolvent; but the evidence is wholly insufficient to warrant the inference that the corporation was insolvent when this stock purchase was made or that it was rendered insolvent by the purchase. So far as this record shows it may well have been that at the time this stock purchase was made and at the time the note given for the stock was paid, the assets of the corporation were sufficient, if the corporation had then been liquid, to pay all of its debts, and its entire outstanding capital stock. See in this connection *Barrett v. W. A. Webster Lumber Co.* (1931) 275 Mass. 302, 175 N. E. 765.