BANK OF AMERICA, the Recovery Group, as Receiver for Educational Credit Services, Inc., Educational Credit Services, LLC and Related Entities, Plaintiffs,

v.

Gary MUSSELMAN, Catherine Musselman, Robert Hacker, Richard Baum, James Miller, Sr., Bowling, Franklin & Co., LLP, Defendants.

No. CIV.A.02–253–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 7, 2002.

S. Ricardo Narvaiz, Fairfax, for Plaintiffs.

Michael Joseph McManus, Brian Arthur Coleman, Drinker, Biddle & Reath L.L.P., Dennis John Quinn, Carr Maloney P.C., Washington, D.C., for Defendants.

## *MEMORANDUM OPINION*

ELLIS, District Judge.

In this diversity action, the bank creditor of an insolvent company and the company's receiver seek to recover the defaulted bank loan amount from the company's officers and directors. Presented in a threshold dismissal motion by one of the defendants is the novel question of Virginia law whether the creditors of an insolvent company may sue the company's officers for breach of fiduciary duty to recover defaulted loan amounts in the absence of self-dealing by the officers.

Although the Supreme Court of Virginia has not yet addressed this specific issue, settled, related principles of Virginia law point persuasively to the conclusion that Virginia would join those jurisdictions that have addressed the issue in holding that officers and directors of an insolvent company may be liable to creditors only where, as is not true here, there are allegations and proof of self-dealing by the officers or directors.

### I.[1]

■ This action arises from lines of credit extended by plaintiff, Bank of America (the "Bank"),[2] a North Carolina company, to Educational Credit Services, Inc. ("ECS"), an insolvent Virginia corporation that was in the business of collecting delinquent student loan accounts on behalf of a variety of institutional clients, including the United States Department of Education, and the education departments of the States of Texas and New York. The second plaintiff, The Recovery Group, (the "Receiver") is a North Carolina corporation that was appointed by a Virginia state court in October 2000 to serve as a receiver for ECS, and two of its related entities.[3]

Of the six defendants, none is a citizen of North Carolina. Three are Virginia citizens, one an Ohio citizen, one a Texas citizen, and one a Florida citizen. Two are ECS directors, three are ECS officers, and the sixth is the accounting firm that served as ECS's accountant and auditor. The sole movant here is one of the officer defendants, Robert Hacker, ECS's Chief Financial Officer, who is not an ECS shareholder.

In 1997, the Bank approved a loan to ECS to be funded via lines of credit. Between November 1997 and February 2000, ECS drew down in excess of $11,000,000 from these lines of credit, and the unpaid balance as of March 1, 2000 is approximately $11,660,512.44, the approximate amount plaintiffs seek here in damages.

The crux of the plaintiffs' case is that defendants, acting on behalf of ECS, induced the Bank to approve the loan and fund the lines of credit during the 1998–2000 time period by using a methodology for calculating ECS's anticipated revenue that produced inaccurate and inflated figures. This methodology, known as "Work

---

1. The facts recited here are derived from the complaint, and are assumed to be true solely for purposes of resolving the motion to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994).

2. NationsBank was Bank of America's predecessor, and approved the loan to Educational Credit Services in 1997. For purposes of clarity, NationsBank and Bank of America are referred to collectively as the "Bank."

3. *See Bank of America, N.A. v. ECS Entities,* Chancery No. CH00–316, Va. Cir. Ct. for Fredericksburg City, Va. (October 20, 2000). When a court-appointed receiver is a party in a diversity action, the citizenship of the receiver is considered for purposes of subject matter jurisdiction. *See* Moore's Federal Practice, § 102.37(3) (3d Ed.); *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1301 (9th Cir.1989).

in Progress" ("WIP"), involved projecting ECS's future revenues by extrapolating from the payment histories of thousands of debtors who ultimately paid their delinquent accounts. Defendants, it appears, labeled these extrapolated figures as "accounts receivable," a characterization that plaintiffs contend painted an inaccurately optimistic picture of ECS's financial condition.

For example, in 1999, ECS informed the Bank that the WIP projection totaled $9,544,547, but ECS's actual accounts receivable were then only $1,616,260. Defendants continued to use the WIP methodology through April and May 2000, at which time WIP projections indicated that ECS's accounts receivable were nearly $27,000,000, when, as plaintiffs allege, ECS's actual accounts receivable were less than $2,700,000. Indeed, plaintiffs allege that ECS was actually insolvent during the 1998–2000 time period. In January 2001, the defendant accounting firm notified the Bank that it no longer considered WIP to be consistent with generally accepted accounting principles, or an accurate method of calculating ECS's future revenues.

Although central to plaintiffs' complaint, defendants' use of WIP is not the sole basis for the complaint against the defendants. Also alleged is that defendants transferred funds from client trust accounts to the ECS operating account for use in paying the company's normal operating costs. These transfers, it appears, occurred beginning in February 2000, and it further appears that defendants replaced all of the funds into the trust accounts by mid-October 2000.

On February 21, 2002, plaintiffs filed a seven count complaint alleging the following claims against the various defendants:

Count I, by the Bank, and Count II, by the Receiver, allege that ECS directors and officers negligently misrepresented WIP to the Bank and its other creditors as an accurate measure of ECS's accounts receivable, thereby inducing the Bank to extend the line of credit to ECS. Counts I and II also allege that the ECS officers were negligent in both making the client trust fund transfers, and failing to disclose them to plaintiffs.

Count III, by the Bank, and Count IV, by the Receiver, allege that ECS directors and officers' breached their fiduciary duties to the Bank and its other creditors by misrepresenting WIP as an accurate measure of ECS' accounts receivable, making the unauthorized trust fund transfers, and then failing to disclose them to plaintiffs.

Count V, by the Bank, alleges that ECS directors and officers committed a tort to property, impairing the value of the Bank's collateral (the value of ECS as a "going concern").

Count VI, by the Receiver, and Count VII, by the Bank,[4] allege that Bowling, Franklin and Co., the accounting firm defendant, negligently approved ECS's use of WIP to assess ECS's financial condition, thereby violating its duty to ECS's creditors, including the Bank.

■ Significantly, plaintiffs' counsel conceded in oral argument that the complaint does not currently allege self-dealing on the part of the defendant directors and officers. Thus, at issue on defendant Hacker's threshold motion to dismiss are the five counts alleged against him and the other individual defendants, namely Counts I through V. Central to Counts I, II, III, and IV is the question whether officers owe a fiduciary duty to corporate

---

**4.** Plaintiffs' complaint omits Count VI. In the interest of clarity, Counts VII and VIII on the complaint are here renumbered to be consecutive with the other counts in the complaint.

creditors during insolvency, and whether that duty extends to circumstances other than self-dealing.[5] This opinion deals with this issue only.[6]

## II.

The threshold issue is choice of governing law. It is clear that Virginia's choice of law rules govern this diversity action. *See Klaxon v. Stentor,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that in a diversity case, a federal court must apply the choice of law rules of the forum state). It is equally clear that because Virginia applies the *lex loci delicti* conflicts rule in tort actions, including breach of fiduciary duty claims, and because Virginia is the place of the wrong in this case, it follows that plaintiffs' claims here are controlled by Virginia substantive law. *See McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662, 663 (1979) (the principle of *lex loci delicti* required application of Virginia law because Virginia was the place of wrong); *Jones v. R.S. Jones and Assoc., Inc.,* 246 Va. 3, 431 S.E.2d 33, 34 (1993); *Buchanan v. Doe,* 246 Va. 67, 431 S.E.2d 289, 291 (1993).

## III.

■ The next issue arises by virtue of the fact that the Supreme Court of Virginia has not yet resolved the question presented here, namely whether an officer of an insolvent company may be sued by creditors for the company's debts in the absence of any self-dealing by the officer. In these circumstances, a federal court in a diversity case in Virginia may either (1) certify the issue to the Supreme Court of Virginia;[7] or (2) analyze related principles in existing Virginia law and canvass authority from other jurisdictions to reach a reasoned conclusion as to what the Supreme Court of Virginia would decide if presented with the issue.

■ As is often the case in the district court, the second alternative is preferable here. Certification is an exceptional procedure that should be invoked only rarely at the district court stage. Instead, certification of an issue, if appropriate at all, is preferable at the appellate stage, as the development of a more complete record in the district court will serve to place the candidate issue in sharper focus, and thus aid the court of appeals in weighing whether certification is warranted, and if so, aid in framing the issue to be certified. Also, certification by district courts is typically premature as the litigation process, including discovery, may result in changing the issue, or eliminating it altogether. And, of course, as often occurs, the matter might also be settled by the parties. It is also sensibly settled that certification is inappropriate where the candidate issue for certification is uniformly settled in other jurisdictions. *See Powell v. United States Fidelity and Guaranty Co.,* 88 F.3d 271, 274 (4th Cir.1996) (holding that the district court did not err when it declined to certify an issue to the Supreme Court of Virginia because other states' examination of the issue was uniform).

■ In general, then, certification by a district court should be reserved for those

---

**5.** Fiduciary duty traditionally encompasses both the duty of care and the duty of loyalty. *See Smith v. Van Gorkom,* 488 A.2d 858 (Del.Super.Ct.1985). Accordingly, plaintiffs' negligence claim is subsumed in their breach of fiduciary duty claim.

**6.** Count V, not affected by this opinion, will be addressed in a separate order.

**7.** *See* Rule 5:42(b), R. Sup.Ct. of Va. This Rule states that a question of Virginia law may be appropriate for certification if it is "determinative in any proceeding pending before the certifying court, and it appears there is no controlling precedent on point in the decisions of the Supreme Court or the Court of Appeals of Virginia." *Id.*

cases where the candidate unsettled issue of Virginia law (i) is dispositive and centrally important to the case; [8] (ii) is unlikely to be settled, rendered moot or altered by factual development or litigation; and (iii) is not uniformly and sensibly settled in other jurisdictions.[9] Because this case does not meet these criteria, certification at this stage is inappropriate. Accordingly, the next step in the analysis is to examine current Virginia law to ascertain whether there are any signposts in that law pointing to an answer to the issue presented. That examination reveals that there are signposts, and that they point persuasively to the conclusion that under Virginia law, creditors may recover from insolvent companies' directors and officers only where it is alleged and proved that the directors and officers engaged in self-dealing or other illegal conduct.

## IV.

◼◼◼◼ In Virginia, it is well-established, by statute and caselaw, that a company's directors and officers [10] owe a duty of care to the company's shareholders.[11] While the Virginia statute does not, by its terms, limit the duty of care to shareholders, the

general rule is that "no direct action lies to a creditor of a corporation against its directors,...for improper performance or failure in performance of their duties." *Anderson v. Bundy,* 161 Va. 1, 171 S.E. 501, 508 (1933). Indeed, the Fourth Circuit has held that "only in extraordinary circumstances are directors liable for corporate debts...[as t]here is a strong public policy of shielding directors from individual liability for corporate debt." *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 534–35 (4th Cir.1988). In the words of the Supreme Court of Virginia, "to refuse to recognize the immunity for directors and officers constitutes 'an extraordinary exception' to be permitted only when it becomes necessary to promote justice." *Cheatle v. Rudd's Swimming Pool Supply Co.,* 234 Va. 207, 360 S.E.2d 828, 831 (1987), (quoting *Beale v. Kappa Alpha Order,* 192 Va. 382, 64 S.E.2d 789, 797 (1951).)

◼◼◼◼ The corporate veil piercing doctrine is one such "extraordinary exception" to the Virginia policy shielding corporate officers from personal liability for corporate debt. Although the policy admits of this exception, the stringency of the stan-

---

**8.** *See* Rule 5:42(b), R. Sup.Ct. of Va.

**9.** *See Powell,* 88 F.3d at 274.

**10.** Many states hold officers and directors to the same standard; the decided cases typically refer to the two positions interchangeably. *See, e.g., FDIC v. Sea Pines Co.,* 692 F.2d 973, 976–77 (4th Cir.1982); *New York Credit Men's Adjustment Bureau v. Weiss,* 305 N.Y. 1, 110 N.E.2d 397, 398 (1953). Yet, with respect to officers, one court applying Delaware law has noted an important limitation: "no fiduciary duty governing the management of a corporation's affairs can be imposed on persons who have no authority to manage those affairs. In the absence of allegations that an officer has such authority under the certificate of incorporation, that officer has no fiduciary duty." *In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 652 n. 10 (Bank.N.D.Ill.1998). This is a sensible limitation as some corporate

officers may have little or no managerial authority over some or all of a company's operations. In this case, however, Hacker was ECS's Chief Financial Officer, and as such, it appears from the face of the complaint that he possessed the requisite degree of managerial authority with respect to the development and use of WIP and the use of trust account funds for company operations.

**11.** *See* Va.Code § 13.1–690 *et seq.; Simmons v. Miller,* 261 Va. 561, 544 S.E.2d 666, 675–76 (2001); *Moneta v. Moneta Building Supply,* 258 Va. 140, 515 S.E.2d 277, 284 (1999). The Virginia statute requires directors to "discharge their duties...in accordance with [their] good faith business judgment of the best interests of the corporation." § 13.1–690A.

dard that must be met to pierce the veil in Virginia reflects the strength of the policy. In essence, a plaintiff must show that the corporate entity was the *"alter ego,* alias, stooge, or dummy of the individuals sought to be charged personally, and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." [12]

Another "extraordinary exception" recognized by Virginia law is the rule that directors and officers may be liable to an insolvent company's creditors when the officers abuse their positions during insolvency by preferring themselves, over other creditors, in the repayment of loans made to the corporation. *See Mills v. Miller Harness Co.,* 229 Va. 155, 326 S.E.2d 665, 666–67 (1985); *Darden v. Lee,* 204 Va. 108, 129 S.E.2d 897, 900 (1963). This rule exists to preclude officers and directors from using their positions of superior knowledge to "secure an undue or unjust advantage" over other creditors of the corporation; it is based on "simple justice." *Darden,* 129

S.E.2d at 900 (quoting *Stuart v. Larson,* 298 F. 223 (1924).) [13]

The third and final "extraordinary exception" to the shield against personal liability of officers for corporate debts is the so-called "trust fund doctrine." This long-standing, but seldom cited,[14] doctrine states that "the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets, or the proceeds thereof, into whatsoever hands they can trace them and subject them to debts, except as against a bona fide purchaser for value." *See Rapids Construction Co. v. Malone,* 139 F.3d 892 (Table), 1998 WL 110151, *4 (4th Cir.1998) (quoting *Ashworth v. Hagan Estates,* 165 Va. 151, 181 S.E. 381 (1935)); *Marshall v. Fredericksburg Lumber,* 162 Va. 136, 173 S.E. 553, 558 (1934). Accordingly, the trust fund doctrine gives creditors a basis for holding officers and directors personally liable for corporate debts when those individuals have engaged in self-dealing acts, or other forms of wrongdoing.[15] Importantly, be-

---

12. *See Cheatle,* 360 S.E.2d at 831 (quoting *Lewis Trucking Corp. v. Commonwealth,* 207 Va. 23, 147 S.E.2d 747, 753 (1966)). Plaintiffs neither allege nor adduce any facts to support the piercing of ECS's corporate veil.

13. To reach this result, the court relied on Virginia's statutory prohibition on fraudulent conveyances, rather than a breach of fiduciary duty owed to creditors. *See Mills v. Miller Harness Co.,* 326 S.E.2d at 666–67; *Darden v. Lee,* 129 S.E.2d at 900 (applying Va.Code § 55–80 to hold that preferences for director or officer creditors were "fraudulent per se"); *c.f. Helm Financial Corp. v. MNVA Railroad, Inc.,* 212 F.3d 1076, 1081 (8th Cir.2000) (holding that directors who prefer themselves over other creditors in the repayment of corporate debts violate their fiduciary duty to creditors).

14. In *Rapids Construction,* the Fourth Circuit noted that the trust fund doctrine, as articulated in *Marshall v. Fredericksburg Lumber,*

162 Va. 136, 173 S.E. 553, 558 (1934), has not been cited by a Virginia court since 1935. Nonetheless, the court held that because the case had not been overruled, the doctrine "remains valid and controlling Virginia authority." *Rapids Construction,* 139 F.3d 892, 1998 WL 110151, *4 (4th Cir., 1998).

15. For example, in both *Rapids Construction* and *Fredericksburg Lumber,* the controlling shareholders, who were also directors and officers, caused the corporation to repurchase their stock, which "amounted to a liquidation," as the cash exchanged for the repurchased stock represented the only remaining assets of the insolvent corporation. *Rapids Construction,* 139 F.3d 892, 1998 WL 110151 *4–5 (citing *Fredericksburg Lumber,* 173 S.E. at 555, 558). The cash went directly into the shareholders-officers-directors' hands. Accordingly, the trust fund doctrine allowed the creditors of the insolvent corporation to follow the liquidated assets to the shareholders-officers-directors' accounts.

cause the trust fund doctrine does not operate in the absence of self-dealing, it is of no avail to plaintiffs here as there are no allegations that Hacker engaged in self-dealing acts to divert ECS assets from plaintiffs' reach.

 In summary, current Virginia law recognizes only three narrow exceptions to the general rule that a corporate officer is not liable for the company's debts. And significantly, each of these exceptions requires self-dealing by the officer. These established Virginia law principles are signposts that point persuasively to the conclusion that Virginia law does not sanction the personal liability of a corporate officer for the debts of an insolvent corporation in the absence of any self-dealing by the officer. Yet, before a final conclusion can be reached as to the Virginia rule on this issue, the law of other jurisdictions must be canvassed to ascertain whether it is consistent with this conclusion.

## V.

The majority of other states have held that during insolvency, a corporate director or officer does owe a limited fiduciary duty to the corporation's creditors.[16] Significantly, these cases uniformly involve self-dealing conduct by the officers or directors.[17] Although self-dealing is uni-

---

**16.** *See, e.g., STN Enterprises v. Noyes,* 779 F.2d 901, 904–05 (2nd Cir.1985) (applying Vermont law); *In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 653 (N.D.Ill.1998) (applying Delaware law); *In re Maxx Race Cards, Inc. v. Erin Mills Capital Corp.,* 266 B.R. 74, 78 (Bankr.W.D.N.C.1998); *St. James Capital Corp. v. Pallet Recycling Associates of North America,* 589 N.W.2d 511, 515 (Minn. Ct.App.1999); *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* 1991 WL 277613 *34 & n. 55 (Del.Ch.1991); *but see Dutton & Vaughan, Inc. v. Spurney,* 600 So.2d 693 (La.Ct.App.1992) (holding that "if officers and directors do not purport to bind themselves individually, they do not incur personal liability for the debts of the corporation.") *Speer v. Dighton Grain, Inc.,* 229 Kan. 272, 624 P.2d 952, 961 (1981) (holding that creditors of an insolvent do not have any direct action against directors or officers for negligent mismanagement).

The economic rationale supporting the imposition of a duty to creditors during insolvency, as articulated by the Delaware courts, is that during solvency, the corporation's shareholders bear the risk of directors' and officers' managerial decisions; thus, directors and officers properly owe shareholders a fiduciary duty. In contrast, when a corporation is insolvent, the creditors, not the shareholders "occupy the position of residual owners [of the corporation]." *Ben Franklin Retail Stores,* 225 B.R. at 653; *Credit Lyonnais,* 1991 WL 277613 *34 n. 55 (Del.Ch.1991); *see also Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787 (Del.Ch.1992); Laura Lin, *Shift of Fiduciary Duty Upon Corporate Insolvency: Proper Scope of Directors' Duty to Creditors,* 46 Vand. L.Rev. 1485, 1489. Put differently, during insolvency, creditors are "expose[d] . . . to risks of opportunistic behavior" by corporate directors and officers. *Credit Lyonnais,* 1991 WL 277613 *34 n. 55.

Some states holding that officers owe a fiduciary duty to creditors during insolvency base their decisions on the trust fund doctrine. *See, e.g., Sea Pines Co.,* 692 F.2d at 976–77 (applying South Carolina law); *Davis v. Woolf,* 147 F.2d 629, 633 (4th Cir.1945) (applying West Virginia law); *Clarkson Co. v. Shaheen,* 660 F.2d 506, 512 (2nd Cir.1981) (applying New York law); *Automatic Canteen Co. v. Wharton,* 358 F.2d 587, 589–90 (2nd Cir.1966) (applying Indiana law); *Whitfield v. Kern,* 192 A. 48, 53–54 (1937) (applying New Jersey law); *Rosebud Corp. v. Boggio,* 39 Colo. App. 84, 561 P.2d 367 (1977) (applying Colorado law).

**17.** *See Sea Pines Co.,* 692 F.2d at 976–77 (directors mortgaged corporate assets for the benefit of the parent company, of which they were also directors); *Shaheen,* 660 F.2d at 512 (controlling director of an insolvent corporation caused the corporation to loan money to him and his controlled companies); *Woolf,* 147 F.2d at 633 (director secured payment of a corporate debt owed to him); *Whitfield,* 192 A. at 53–54 (directors withdrew corporate funds to pay, *inter alia,* excessive salaries to themselves). *See generally,* 18B Am.Jur.2d Corporations § 1842 ("generally,

formly present in cases from other jurisdictions, it appears that only four courts have squarely addressed whether officers and directors of insolvent corporations may be liable for corporate debts in the absence of self-dealing, and all four have held that self-dealing is essential for liability. *See, e.g., Helm Financial Corp. v. MNVA Railroad, Inc.*, 212 F.3d 1076 1081–82 (8th Cir.2000) (applying Minnesota law); *Ben Franklin Retail Stores*, 225 B.R. at 655–56 (applying Delaware law); *St. James Capital Corp.*, 589 N.W.2d at 515–16 (applying Minnesota law); *First Nat'l Bank of Boston v. Une*, 1988 WL 130050 (N.D.Ill.1988) (noting, without discussion, that Illinois and Massachusetts law do not hold officers liable for an insolvent corporation's debts based merely on negligence and in the absence of self-dealing).[18]

Particularly apposite is the *Ben Franklin* case. There, corporate officers and directors were accused of "wrongfully prolonging [the corporation's] life beyond the point of insolvency by misrepresenting the true value of [its] accounts receivable." 225 B.R. at 649. The directors and officers had changed the due dates of millions of dollars of receivables to make them appear current, when, in fact, they were past due. In so doing, they inflated the value of the corporation, which induced the creditors to extend loans to the corporation and supply inventory. *Id.* The Illinois court, applying Delaware law, held that "the 'insolvency exception' to the general rule that directors owe no duty to creditors is, after all, an exception. Its scope should be no greater than the problem it was intended to solve." *Id.* at 655–56. Accordingly, because there were no allegations of self-dealing by the officers and directors, the court rejected the creditors' breach of fiduciary duty claim.

Also instructive are the Minnesota cases of *Helm Financial Corp.* and *St. James Capital Corp.*, which both declined to extend an insolvent company's officer's fiduciary duty to circumstances other than self-dealing. In *Helm Financial Corp.*, the Eighth Circuit rejected a creditor's

---

[cases that hold that directors are fiduciaries or trustees for creditors] have involved some element of fraud or deceit."); 15A Fletcher Cyclopedia of Private Corp. § 7369 (describing the objective of the trust fund doctrine as preventing any preference for one creditor over another). Indeed, one commentator has noted that almost all states that recognize the trust fund doctrine "do not necessarily recognize its application in cases of breach of the duty of care by directors; rather, they confine it to cases of improper preferential treatment by directors." Zipora Cohen, *Directors' Negligence Liability to Creditors: A Comparative and Critical View*, 26 J. Corp. L. 351, 380–81 (2001); *see also* Lin, 46 Vand. L.Rev. at 1513 & nn. 91–92 (1993) ("All of the decisions in which the courts have allowed creditors to recover for breach of fiduciary duty have involved directors of an insolvent corporation diverting corporate assets for the benefit of insiders or preferred creditors.").

**18.** *See also In re Maxx Race Cards*, 266 B.R. at 78–79. In *Race Cards,* the North Carolina

Bankruptcy Court held that directors and officers owe creditors a fiduciary duty when the corporation is "winding up or dissolving." *Id.* The court noted that "the North Carolina rule means that no duty is owed to the creditors if the corporation is balance sheet insolvent, and the directors and officers are acting in good faith in running the business." *Id.* In contrast, directors and officers would owe a fiduciary duty to creditors during insolvency if they were acting in bad faith in maintaining the business, because under those circumstances, insolvency would be treated as tantamount to dissolution. *Id.* One example of bad faith given by the court is when the directors and officers runs an insolvent corporation for the sole purpose of recovering amounts owed to them, to the detriment of other creditors. *Id.* In that case, the North Carolina court found that the creditors had failed to allege any bad faith on the part of the defendant directors and officers, and accordingly found that no fiduciary duty existed. *Id.*

attempt to hold directors and officers personally liable for selling off the corporation's most valuable asset—its subsidiary corporation's stock—to the shareholders of the parent corporation. 212 F.3d at 1080–81. The court held that because the officers and directors did not engage in self-dealing or grant themselves a preference above other creditors, they could not be held personally liable. *Id.* In so holding, the court in *Helm Financial Corp.* reiterated the Minnesota rule that an officer or director's fiduciary duty to a creditor of an insolvent company arises only "to the limited extent that they are prohibited from securing for themselves, as creditors, a preference over other creditors." *Id.* at 1081.

*St. James Capital Corp.*, a decision relied on in *Helm Financial Corp.*, is to the same effect. There, the Minnesota Court of Appeals rejected a creditor's attempt to extend the directors' and officers' fiduciary duty to include a general duty of care to "preserve and protect the assets of the corporation" for the creditor's benefit. *St. James Capital Corp.*, 589 N.W.2d at 514. The creditors in *St. James Capital Corp.* had sought to hold directors personally liable for their failure to sell the corporation, which resulted ultimately in the creditors receiving far less than expected from the corporation's liquidation. An opportunity to sell the corporation prior to liquidation was lost when the directors apparently breached the strict confidentiality agreement insisted upon by the potential buyer. But significantly, there was no allegation that the directors had committed any self-dealing acts. Critical to the Minnesota court's decision was its recognition that to allow liability to be based on mere negligence, in the absence of self-dealing, would "seriously erode the limited liability protection granted by the corporate structure,.... [and] allow creditors... to interfere unduly and interject themselves in the day-to-day management of the corporation." *Id.* at 516. Thus, the court limited the personal liability of officers for an insolvent corporation's debts to circumstances that invoke the original rationale for holding that directors and officers owe creditors a fiduciary duty during insolvency: namely, to prevent directors and officers from preferring themselves over other creditors, *i.e.* self-dealing. *Id.* at 514–15.

In summary, the law of other jurisdictions is that directors and officers owe a limited fiduciary duty to creditors during insolvency; this duty extends only to refraining from self-dealing acts.[19] This state of the law in other jurisdictions supports the conclusion, drawn from the signposts in Virginia law, that officers of an insolvent corporation cannot be held personally liable for corporate debts absent the presence of self-dealing facts. Although plaintiffs conceded in oral argument that the current complaint does not allege self-dealing, it is appropriate to allow plaintiffs leave to amend the complaint to allege the required self-dealing, if they can do so consistent with the strictures of Rule 11,

19. A survey of other jurisdictions undertaken by one commentator reveals five general categories of self dealing acts that may constitute a breach of fiduciary duty actionable by a creditor: (1) withdrawing corporate assets from an insolvent corporation to pay debts owed to directors or officers; (2) using corporate funds to pay off debts personally guaranteed by the director or officer; (3) engaging in transactions for the benefit of the parent company; (4) appropriating proceeds from the sale of corporate assets, or transferring assets to a related entity, thereby rendering the corporation insolvent; and, (5) using corporate assets as collateral for personal stock purchases. *See* Lin, 46 Vand. L.Rev. at 1513 (citations omitted). Hacker's use of WIP and the trust fund transfers fits into none of these recognized categories of self-dealing.

Fed.R.Civ.P. Accordingly, Hacker's motion to dismiss Counts I–IV must be granted.

An appropriate order will issue.