PRESENT: Keenan, Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Carrico, S.J.

JON LURIA, ET AL.

OPINION BY
v. Record No. 080515      JUSTICE LEROY F. MILLETTE, JR.
February 27, 2009

BOARD OF DIRECTORS
OF WESTBRIAR CONDOMINIUM
UNIT OWNERS ASSOCIATION


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Kathleen H. MacKay, Judge

In this appeal, we consider whether the circuit court
erred in finding that a managing member of a limited liability
company owed a fiduciary duty to a creditor. We focus our
inquiry on whether The Westbriar Condominium Unit Owners
Association (the Association), as a potential statutory
warranty claimant, qualified as a creditor to whom such a
fiduciary duty may be owed.

BACKGROUND

Jon Luria (Luria) is a real estate developer in Northern
Virginia. In 1996, Luria began construction of The Westbriar
Condominium (the Westbriar), a four building, 224-unit
condominium in Fairfax.[1] Throughout construction of the
Westbriar, Luria used a corporation and two limited liability
companies (LLCs) to successively hold title to and manage

---

[1] The Westbriar attained its status as a condominium by the
May 12, 1998 recordation of a Declaration of The Westbriar
Condominium, as required by Code § 55-79.45.

development of the project.  Each of these three entities (the Declarants) also served as a declarant of the Westbriar.

The first entity to hold title was Jade Westbriar, Inc., a Virginia corporation, which was formed in 1996.  Jade Westbriar, Inc. was 100% owned by Ellen Luria.  In 1998, Jade WFW, LLC was formed and was owned 50% each by Jon and Ellen Luria.  In 2001, The Westbriar, LLC was formed to manage the completion of the Westbriar project and was also owned 50% each by Jon and Ellen Luria.   Luria was a member of and was the manager of both Jade WFW, LLC and The Westbriar, LLC.

During construction of the project, Luria did not honor general and administrative costs as provided in the agreements with lenders and made a series of improper transfers and draws of funds from the various entities.  The circuit court adopted the Association's contention that the improper transfers Luria made to himself took place from 1996 through the end of 2002.

On the exterior of the Westbriar buildings, Luria used an alternative to stucco or siding, the Exterior Insulation and Finish System (the EIFS).  Luria hired a reputable, certified contractor to install the EIFS, and the installation was certified after its completion, in compliance with Fairfax County building regulations.

On June 8, 1999, Christian J. Lessard, the Westbriar's project architect, sent Luria a letter identifying ten specific

categories of problems with the construction that Lessard discovered during his substantial completion walk through. Two of the problems related to the EIFS. Specifically, Lessard's letter stated that flashing and caulking were needed in certain areas. The letter also suggested that a moisture meter be used to verify that there were no moisture problems behind the EIFS. On June 17, 1999, Luria and Lessard executed an indemnification agreement, which provided that Luria would indemnify Lessard from any liability that may arise from Luria's failure to perform the work necessary to correct the problems in Lessard's letter.

On October 23, 2000, Lessard provided Luria with a field report that Lessard prepared pursuant to another substantial completion review. The field report listed twenty-one specific comments and itemized various problems with individual units. Three of the twenty-one comments listed related to the EIFS. Specifically, two of the comments referenced flashing and caulking of the EIFS and one suggested that Luria hire a "water proofing engineer" to verify all flashing applications. On July 30, 2002, control of the Association passed to the unit owners. Thereafter, the Association hired an engineering firm, Engineering and Technical Consultants, Inc. (Engineering Consultants), to conduct a warranty inspection "for the purpose of identifying structure defects, as defined by the Condominium

3

Act."  On December 23, 2002, Engineering Consultants submitted a report to the Association's counsel that detailed several defects in the Westbriar.  The report noted that the EIFS was in "poor condition" and made recommendations to fix the various problems associated with the EIFS.  Engineering Consultants estimated the cost to repair the EIFS defects could amount to as much as $3,730,000.00.  By a letter dated March 12, 2003, the Association's counsel advised Luria of defects in the EIFS within the scope of the statutory warranty.

Engineering Consultants conducted a follow up inspection specifically addressing the EIFS and prepared a supplemental report.  The supplemental report, submitted to the Association's counsel on May 5, 2003, noted that the defects in the EIFS were "systematic and comprehensive" and recommended that the EIFS be "completely removed and replaced."

On May 9, 2003, the Association filed a motion for judgment against the Declarants, Jon Luria, Ellen Luria, and others.  Subsequently, the Association amended its motion for judgment, and alleged the defendants constructed the buildings with major structural defects and the Lurias used the entities they controlled to fraudulently avoid obligations owed to the Association as a creditor.  The amended motion for judgment

4

contained six counts, which included counts III and V.[2] Count III alleged that by making improper transfers and distributions for his own benefit, Luria breached his fiduciary duty to the Association as a creditor. Count V alleged that the improper transfers to Luria constituted illegal distributions by the Declarants.

The circuit court conducted a bench trial and issued a letter opinion, awarding judgment against Luria on both counts III and V. The circuit court based its finding of liability for breach of fiduciary duty to the Association as a creditor under count III on Marshall v. Fredericksburg Lumber Company, 162 Va. 136, 173 S.E. 553 (1934).

In Marshall, this Court held that "where there are existing creditors of a corporation the stockholders will not be permitted, as against those creditors, to withdraw the assets of the corporation without consideration, whether it be done through a purchase of stock by the corporation or otherwise." Id. at 147, 173 S.E. at 557. In its letter opinion, the circuit court stated that "Luria's conduct of

_____

[2] Under count I, the circuit court concluded that the Declarants breached the statutory warranty under Code § 55-79.79 and assessed damages against the Declarants in the amount of $5,813,416.00. Under count VII (alter ego liability) judgment was entered against both Jon and Ellen Luria in the amount of $5,813,416.00. Counts II, IV, and VI were dismissed.

5

withdrawing the declarants' assets falls within the conduct contemplated and prohibited by the Court in Marshall."

The circuit court determined that "[Luria's] liability as [a] fiduciar[y] to the Association is contingent upon a finding that the Association was a creditor [of the Declarants] when the improper preferences were made."  In making this determination, the circuit court first addressed "whether a potential statutory warranty claimant can be considered a 'creditor.' "  The circuit court analyzed cases regarding claimants who had not yet reduced their demands to judgment, including potential tort claimants.  Finding no meaningful distinction between potential tort claimants and potential statutory warranty claimants, the circuit court concluded the Association was a "creditor of the Declarants" based upon notice to Luria of the Association's potential statutory warranty claim.

The circuit court stated that the "weight of the evidence showed that by virtue [of] the information [he] received on site and/or from [his] experience in the development and construction industries [, Luria] knew that there were problems regarding the EIFS installation."  In reaching this determination, the circuit court stated that the evidence it principally relied upon was Lessard's letter, the

indemnification agreement between Luria and Lessard, and the October 23, 2000 field report.

Based upon its determination that Luria was on notice of "serious structural defects" from the use and installation of the EIFS at the Westbriar, the circuit court found that the Association was a creditor of the Declarants from the first outsale of condominium units in June of 1998. The circuit court then adopted the Association's position that Luria, as the Declarants' controlling member, directed transfers and distributions to his own benefit from 1996 through 2002. The circuit court concluded that Luria's withdrawal of the Declarants' assets constituted self-dealing and was a breach of the fiduciary duty he owed to the Association as a creditor of the Declarants. The circuit court ordered Luria to refund the sum of $3,484,363.40. The circuit court used the same analysis in awarding the Association identical relief against Luria under count V for illegal distributions by the LLCs. We granted Luria this appeal only as to the issue of the duty owed to a potential statutory warranty claimant, addressed in counts III and V.[3]

---

[3] We will only address the portions of Luria's assignment of error that are dispositive to the resolution of this appeal. See Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 477, 666 S.E.2d 361, 367 (2008).

DISCUSSION

Luria contends the circuit court erred in finding in favor of the Association for breach of fiduciary duty to a creditor and illegal distributions under counts III and V. According to Luria, this Court has never imposed upon the managing member of an LLC a fiduciary duty to a third party creditor. Luria also argues that the Association was not a creditor of the Declarants because Luria did not have actual notice of any potential statutory warranty claim. Luria contends the circuit court erred as a matter of law in finding that the legal right to potentially assert a claim in the future creates a fiduciary duty.

In response, the Association argues that the circuit court properly imposed liability upon Luria under the trust fund doctrine as articulated in Marshall. The Association asserts that it was a creditor because Luria had knowledge of defects that would support a claim for breach of statutory warranty. The Association also contends that notice of a statutory warranty claim in this case was not possible because the Declarants controlled the Association prior to the transfer of control to the unit owners.

The resolution of the issue before us presents a mixed question of law and fact, which we review de novo. In our review of the circuit court's application of the law to the

facts, we give deference to the circuit court's factual findings and view the facts in the light most favorable to the Association, the prevailing party below. Virginia Baptist Homes, Inc. v. Botetourt County, 276 Va. 656, 663, 668 S.E.2d 119, 122 (2008); The Daily Press, Inc. v. City of Newport News, 265 Va. 304, 309, 576 S.E.2d 430, 432-33 (2003); Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).

Whether the Association is a creditor is dispositive in resolving this appeal because the Association's creditor status triggers both the creation of a fiduciary duty and imposition of liability under Marshall. It is an issue of first impression in Virginia whether a potential statutory warranty claimant can be considered a creditor.

As an initial matter, this Court has held in addressing the fraudulent conveyance statute, Code § 55-80, that "[t]o maintain an action under this statute, the entitlement of one alleging a fraudulent conveyance need not be judicially established or reduced to judgment at the time of the challenged conveyance." Buchanan v. Buchanan, 266 Va. 207, 212, 585 S.E.2d 533, 535 (2003). Thus, obtaining a judgment against a party is not a prerequisite to establishing creditor status. See Bruce v. Dean, 149 Va. 39, 46, 140 S.E. 277, 280 (1927); Johnson v. Wagner & Sons, 76 Va. 587, 590 (1882).

9

This Court has held that potential tort claimants can be considered creditors if the putative debtor has adequate notice of the claim.  See Bruce, supra.  In Bruce, this Court addressed whether a convicted murderer's transfer of assets should be set aside as a fraudulent conveyance when the transfer occurred two weeks after the victim's surviving family member filed a tort action.  Id. at 42-44, 140 S.E. at 279.  For purposes of a fraudulent conveyance, the Court held that the surviving family member, and potential tort claimant, was a creditor.  Id. at 46, 140 S.E. at 281.

Notwithstanding any functional differences between potential tort claimants and potential statutory warranty claimants, the key consideration in establishing creditor status is whether there was actual notice of a specific potential claim.  The circuit court did not require a showing of actual notice of the structural defects from the EIFS to support its conclusion that the Association was a creditor of the Declarants in 1998.  The circuit court implicitly applied a "should have known" standard when it based its determination of notice upon "the information [Luria] received on site and/or from [Luria's] experience in the development and construction industries."  In doing so, the circuit court applied an erroneous legal standard.  We hold that the notice required to

10

create creditor status is actual notice of a specific potential statutory warranty claim.

The Condominium Act creates a statutory warranty against structural defects for the benefit of condominium purchasers. Code § 55-79.79(B), in pertinent part, provides: "the declarant shall warrant or guarantee, against structural defects, each of the units for two years from the date each is conveyed." Code § 55-79.79(B) further provides that "structural defects shall be those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration, or replacement." Based on Lessard's letter and the October 23, 2000 field report, Luria did not have notice of specific structural defects with the EIFS. The letter and field report did not notify Luria of any defect that reduced "stability" or "safety" of the Westbriar. Rather, the documents contained a series of "punch list" problems, only some of which addressed the EIFS, and made a series of recommendations to address the problems listed.

Assuming, without deciding, that a managing member of an LLC may owe a fiduciary duty to a third party creditor under certain circumstances, we hold that the evidence presented at

trial was insufficient to establish that the Association was a creditor upon the first outsale in June of 1998.[4]  As previously stated, the June 8, 1999 letter and October 23, 2000 field report from Lessard, as well as the indemnification agreement, establish that Luria was on notice of problems with the EIFS during construction of the Westbriar.  However, these documents do not establish that Luria had actual notice of a specific potential statutory warranty claim because the problems noted were not characterized as structural defects "which reduce[d] the stability or safety of the structure below accepted standards or restrict[ed] the normal intended use of all or part of the structure."  Code § 55-79.79.  The recommendations were to remedy the problems by repairs such as caulking and flashing.  Unlike in Marshall, where the creditor advanced funds to the debtor corporation, and unlike in Bruce where the tort claimant had already filed suit when the putative debtor made a transfer, the evidence in this case failed to demonstrate that Luria had actual notice of a potential statutory warranty claim when Luria directed the transfers and distributions for his own benefit.

---

[4] The arguments presented refer to Luria as a "member" of the Declarants, however, the evidence presented at trial and alleged in the pleadings established that Luria was the managing member of the Declarants.  This case was litigated on the theory that Luria controlled and managed the Declarants,

After control of the Association passed to the unit owners and Engineering Consultants identified structural defects, actual notice of the specific structural defects was first received by the Association's counsel on December 23, 2002. However, Luria did not have actual notice of the specific structural defects until he received the March 12, 2003 letter from the Association's counsel. Specifically, the letter stated that there were "widespread defects" with the EIFS as well as other common elements in the Westbriar. Additionally, the stated purpose of the letter addressed to Luria was "to notify you of defects within the Condominium Common Elements that are within the scope of your statutory warranty." Upon receiving this letter, Luria was on actual notice of facts that would support a specific potential statutory warranty claim. Thus, the Association became a creditor beginning in March of 2003. Again, assuming, without deciding, that Luria as the managing member of the Declarants owed a fiduciary duty to the Association as a creditor in March of 2003, Luria did not breach that duty by making improper distributions because the circuit court found that all of the improper distributions occurred before 2003.

<u>CONCLUSION</u>

---

and we will not elevate form over substance by disregarding the true nature of the Association's claim.

The circuit court erred in finding that the Association, as a potential statutory warranty claimant, was a creditor of the Declarants at the time transfers were made to Luria because Luria, as the managing member of the Declarants, did not have actual notice of the structural defects caused by the EIFS. Accordingly, the circuit court's judgment on counts III and V will be reversed.

<u>Reversed and final judgment.</u>